**BIANCHI & BIANCHI**
**80 Orchard Street**
**Bloomfield, New Jersey 07003**
**(973) 680-9900**
**Attorneys for Plaintiff**



FEB 1 2 2001

WILLIAM T. WALSH
CLERK

| | |
|---|---|
| DARREN M. NANCE | UNITED STATES DISTRICT COURT |
| Plaintiff, | DISTRICT OF NEW JERSEY |
| vs. | Civil Action No. 97-6184 ~~(AMW)~~ (CAV) |
| CITY OF NEWARK; NEWARK POLICE DEPARTMENT; JOSEPH J. SANTIAGO, individually and in his official capacity as a City of Newark Police Officer; THOMAS C. O'REILLY, individually and in his official capacity as a City of Newark Police Officer, ROBERT K. RANKIN, JR., individually and in his capacity as a City of Newark Police Officer; MITCHELL McQUIRE, individually and in his official capacity as a City of Newark Police Officer; MICHAEL O'CONNOR, individually and in his official capacity as a City of Newark Police Officer; JAMES DAVID O'CONNOR, individually and in his official capacity as a City of Newark Police Officer; WILLIE E. UNDERWOOD, individually and in his official capacity as a City of Newark Police Officer; IRVING B. GULLER, individually and as an agent of the City of Newark Police Department; JOSE COLON, individually and in his official capacity as a City of Newark; Police Officer; CHADRAKANT PATEL, individually and as an agent of the City of Newark Police Dpeartment; JAMES E. TUNIS, individually and in his official capacity as a City of Newark Police Officer; ISABELLA CASTELLANOS, individually and in her official capacity as an agent for the City of Newark; VINCENT BONGERMINO, individually and in his capacity as a City of Newark Police Officer;  and JOHN DOES (1-10), | **THIRD AMENDED VERIFIED COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff, DARREN NANCE, by and through his attorneys, BIANCHI & BIANCHI, complaining of defendants, alleges as follows:

## INTRODUCTION

1.  This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3, for employment discrimination based upon reprisal. This action is also brought pursuant to 42 U.S.C. § 1983 et seq. to redress past deprivation and prevent further deprivation by defendants and their agents, acting under color of law, statute, ordinance, regulation, custom and usage of rights which are secured to plaintiff by the United States Constitution, the amendments thereto, Federal and State statutes and the common law.  This action is further brought pursuant 42. U.S.C. §1985; N.J.S.A. 34:19 et seq., New Jersey's Conscientious Employee Protection Act (CEPA); and N.J.S.A. 10:5-1 et seq., the New Jersey Law Against Discrimination.

2.  Plaintiff seeks appropriate monetary, equitable, injunctive and such other relief to redress the wrongdoings complained of herein.

## JURISDICTION & VENUE

3.  The jurisdiction of this Court is invoked based upon 42 U.S.C. §2000e-5(f), 28 U.S.C. §§ 1331(a), 1343(1), 1346, 2301 and 1367, which permits this Court to assume jurisdiction over plaintiff's State claims.

4.  Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.  Plaintiff filed a Charge of Discrimination against defendants with the Equal Employment Opportunity Commission (EEOC) and the New Jersey Division of Civil Rights.

2

6.  On or about September 19, 1997, the EEOC issued a Notice of Right to Sue to plaintiff.

7.  Plaintiff duly filed a Complaint in this Court on or about December 18, 1997. Plaintiff subsequently filed an Amended Complaint on or about January 7, 1998. Plaintiff filed a Second Amended  Complaint on or about November 17, 1999.

8.  Plaintiff exhausted all prerequisite administrative remedies that were required prior to the commencement of this action.

## THE PARTIES

9.  Plaintiff, DARREN NANCE, at all times relevant hereto, was and still is a citizen of the United States and a resident of the State of New Jersey, to wit: 71 Treacy Avenue, Newark.

10. Defendant CITY OF NEWARK (hereinafter "CITY") is a municipality pursuant to the laws of the State of New Jersey and is located at City Hall,  920 Broad Street, Newark, New Jersey, County of Essex.  At all times relevant hereto, the City of Newark maintained and operated a Police Department.

11. Defendant NEWARK POLICE DEPARTMENT (hereinafter "POLICE DEPARTMENT"), at all times relevant hereto, was and still is an agency maintained and operated by defendant CITY and was that agency of defendant CITY whose employees perpetrated the acts complained of herein.  Defendant POLICE DEPARTMENT  is located at 22 Franklin Street, Newark, New Jersey.

12. At all times relevant hereto, defendants CITY and POLICE DEPARTMENT were and still are "employers" for purposes of 42 U.S.C. §2000e et seq. and the Conscientious Employee Protection Act.

3

13. At all times relevant hereto, defendant JOSEPH J. SANTIAGO (hereinafter "SANTIAGO") since on or about 1996, has been the duly sworn Director of defendant POLICE DEPARTMENT.  As Director, defendant SANTIAGO, pursuant to statute and ordinance, is the Chief Executive Officer of defendant POLICE DEPARTMENT and makes, administers, and enforces the rules and regulations for the control, disposition and discipline of defendant POLICE DEPARTMENT and its officers and employees. SANTIAGO also established procedure for the hearing and determination of charges of violation of departmental rules and regulations.

14. As Director, defendant SANTIAGO makes policy decisions relating to defendant POLICE DEPARTMENT and formulates policy decisions to guide the Chief of Police of defendant POLICE DEPARTMENT in operating the day-to-day operations of defendant POLICE DEPARTMENT.  Defendant SANTIAGO, as Director of defendant POLICE DEPARTMENT, possesses final, unreviewable policy making authority for all police matters in defendant CITY.

15. At all times relevant hereto, defendant THOMAS C. O'REILLY (hereinafter "O'REILLY") was employed as the Chief of Police of defendant POLICE DEPARTMENT and as such has statutory authority to operate the day-to-day operations of defendant POLICE DEPARTMENT.

16. At all times relevant hereto, defendant ROBERT K. RANKIN, JR., (hereinafter "RANKIN") was employed as the Deputy Police Chief of defendant POLICE DEPARTMENT assigned to the Criminal Investigations Division.  Defendant RANKIN, within the scope of his employment as Deputy Police Chief of defendant POLICE

4

DEPARTMENT, served as a member of the Trial Board before which the plaintiff was ordered to appear.

17. At all times relevant hereto, defendant MICHAEL O'CONNOR (hereinafter "M. O'CONNOR") was employed as a Deputy Police Chief of defendant POLICE DEPARTMENT assigned to the Office of the Police Director.  Defendant M. O'CONNOR, within the scope of his employment as Deputy Police Chief of defendant POLICE DEPARTMENT, served as a member of the Trial Board before which the plaintiff was ordered to appear.

18. At all times relevant hereto, defendant MITCHELL McQUIRE (hereinafter "McQUIRE") was employed as a Captain of defendant POLICE DEPARTMENT assigned to the Office of Police Director.  Defendant McQUIRE, within the scope of his employment as Deputy Police Chief of defendant POLICE DEPARTMENT, served as a member of the Trial Board before which the plaintiff was ordered to appear.

19. At all times relevant hereto, defendant JAMES DAVID O'CONNOR (hereinafter "J. O'CONNOR") was employed as a Lieutenant of defendant POLICE DEPARTMENT assigned to the Prisoner Detention Bureau.

20. At all times relevant hereto, defendant WILLIE E. UNDERWOOD (hereinafter "UNDERWOOD") was employed as a Lieutenant of defendant POLICE DEPARTMENT assigned to the Internal Affairs Division.

21. At all times relevant hereto, defendant CHADRAKANT PATEL (hereinafter "PATEL") was a medical doctor contracted with defendants CITY AND POLICE DEPARTMENT.

22. At all times relevant hereto, defendant JAMES E. TUNIS (hereinafter "TUNIS") was employed as a Lieutenant of defendant POLICE DEPARTMENT assigned to the Medical Services Division under the supervision of the Police Director.

23. At all times relevant hereto, defendant VINCENT BONGERMINO (hereinafter "BONGERMINO") was employed as a Sergeant of defendant POLICE DEPARMENT assigned to the Internal Affairs Division.

24. At all times relevant hereto, defendant IRVING B. GULLER (hereinafter "GULLER") was a licensed, practicing Psychologist of the State of New Jersey contracted by defendant CITY.

25. At all times relevant hereto, defendant ISABELLA CASTELLANOS was a licensed, practicing attorney of the State of New Jersey employed by defendant CITY.

26. Defendants JOHN DOE (1-10) are fictitious defendants whose present identities are unknown. These defendants engaged in the unlawful actions against plaintiff as described herein, assisted others in committing the unlawful actions against plaintiff, conspired with defendants to commit the unlawful actions against plaintiff and were aware of the unlawful actions of others against plaintiff but failed to take any action to stop such unlawful actions.

27. The individual defendants herein are sued in their individual and official capacities.

28. At all times relevant hereto and in all their actions described herein, the individual defendants were acting under color of law and pursuant to their authority as public officers.

29. All defendants and their agents, servants and employees supervised, participated in, approved, carried out, conspired with each other and were aware of but failed to prevent the alleged activities contained herein.

30. All of the actions described herein may be fairly said to represent official policy, ordinance, practice and custom and were committed by public officers high enough in the relevant municipal entities so that their actions may be said to represent municipal decisions.

31. The actions, inactions and conspiracies alleged herein were engaged in and carried out by defendants as officials, agents, employees and co-conspirators of defendant CITY acting by and through their employees, agents, officials and co-conspirators pursuant to governmental policy, practice and custom and under color of law.

## THE FACTS

32. Plaintiff, an African-American male, was employed as a Police Officer by defendant CITY from October 16, 1989 until his involuntary separation from defendant POLICE DEPARTMENT on September 3, 1996.

33. In or about 1990, plaintiff was partnered with a White Police Officer, Michael Lapoint.  While on patrol and in plaintiff's presence, Officer Lapoint referred to a citizen

7

in need as a "drunk nigger."  Plaintiff confronted Officer Lapoint about his racist remarks and asked him to refrain from using such language in the future.  Officer Lapoint then physically threatened the plaintiff.  Upon returning to headquarters, plaintiff reported Officer Lapoint's racist remark to the Desk Sergeant, Sergeant Robert Gerardo.  As plaintiff was leaving work, Officer Lapoint and two other white Police Officers again physically threatened him.  Officer Lapoint followed plaintiff in his automobile, effectively caused plaintiff to stop his car, opened plaintiff's car door, and assaulted him with a pair of handcuffs.  After plaintiff managed to effectively defend himself and escape, Officer Lapoint returned to headquarters and filed false criminal charges against Mr. NANCE.  Mr. NANCE requested that he have an opportunity to explain and charge Officer Lapoint, but the Internal Affairs department refused to investigate.  This criminal charge remained on plaintiff's disciplinary record for a period of years, with no ultimate resolution.  Criminal charges against plaintiff were ultimately dismissed when plaintiff agreed to dismiss charges against Officer Lapoint.

34. Plaintiff, during his employment as a Police Officer with defendant CITY, was a vocal advocate for the rights of minority Police Officers in defendant CITY and was associated with the Society of Afro-American Police Officers.  Plaintiff has been active in advancing the interests of Afro-American Police Officers.

35. As such, plaintiff, during his employment as a Police Officer in defendant CITY, constantly complained to his superiors in defendant POLICE DEPARTMENT about disparate treatment and double standards afforded minority Police Officers and minority civilians, including himself, in defendant CITY.

8

36. Plaintiff has also lodged such complaints with appropriate government agencies, including the Newark City Council, to which he has complained about his treatment and the treatment of other African American Police Officers within defendant POLICE DEPARTMENT. Plaintiff has also frequently appeared in the media lodging said complaints.

37. On or about August 24, 1993, plaintiff was arrested and degunned by defendant POLICE DEPARTMENT's Internal Affairs Division and accused of having committed an assault upon his juvenile half-brother inside the West-District Police Station. On or about December 19, 1994, plaintiff was subsequently tried in a judicial forum in the Superior Court of Essex County and was acquitted on all criminal accusations filed against him by defendant Police Department.

38. In or about December, 1993, plaintiff filed a discrimination action in the State Superior Court, Essex County, against the City of Newark, Newark Police Department, certain supervisory officials of defendant POLICE DEPARTMENT, including the Police Director and Chief of Police. Said action was captioned as Darren Nance v. Carolyn Jacobs, et al., Docket No. ESX-L-16854-93.

39. On or about February 26, 1994, plaintiff was arbitrarily and without explanation ordered to submit to a psychological re-evaluation by defendant POLICE DEPARTMENT. Plaintiff complied with said order and underwent the psychological re-examination which was conducted by Dr. Edward R. Tabbanor, an expert Psychiatrist engaged by defendant CITY.

9

40. In or about March, 1994, expert Psychiatrist Dr. Edward R. Tabbanor rendered his expert opinion in writing to defendant CITY that plaintiff was found to be free of any mental disorder and further found plaintiff to be psychologically qualified to perform duties as a Newark Police Officer.

41. On or about May 20, 1994, plaintiff submitted an administrative submission to defendant POLICE DEPARTMENT complaining about the racist conduct of his immediate supervisor, Lt. Edwin Salau. In retaliation, defendant SANTIAGO, then Deputy Chief, ordered that an investigation be commenced against both plaintiff and another African-American Police Officer, Shakoor Mustafa, who had confirmed in writing to defendant POLICE DEPARTMENT the racist behavior and reprehensible conduct of the white supervisor.

42. On or about November 10, 1994, plaintiff sustained an on-duty injury in the performance of his duties as a Newark Police Officer while assigned to the Prisoner Detention Bureau, which required physical therapy and treatment. Plaintiff underwent orthopedic therapy treatment at the medical offices of defendant PATEL, a physician contracted with defendant CITY, on or about October 29, 1994.

43. Defendant PATEL diagnosed plaintiff as having suffered from a "hyperextended rotor cuff" of his left shoulder. PATEL advised plaintiff that treatment of his injury would require four (4) to six (6) weeks of absence from work and physical therapy at his office.

44. In or about the third week into said therapy treatment by PATEL, PATEL approached plaintiff inside of his treatment room and asked plaintiff "How are you feeling?" Plaintiff responded that he was still suffering pain in his left shoulder. PATEL

10

advised plaintiff that he had just received a telephone call from a "Dr. Tunis" who ordered that plaintiff be returned to work on "light duty" status in the Prisoner Processing Division.  Plaintiff advised PATEL that there was no licensed medical practitioner within defendant POLICE DEPARTMENT named "Dr. Tunis," but there was a Lieutenant TUNIS in defendant POLICE DEPARTMENT's Medical Services Office.

45. On or about November 10, 1994, PATEL made certain admissions to plaintiff in regard to his decision to return plaintiff back to work on "light duty" status, advising plaintiff that he was acting upon the verbal authorization from defendant TUNIS who identified himself as "Dr. Tunis" of the Police Surgeon's Office.

46. On November 11, 1994, plaintiff was ordered by defendant POLICE DEPARTMENT, without explanation, to appear at the Office of the Police Surgeon at One Lincoln Avenue, Newark for a scheduled "examination."  Plaintiff did appear as ordered, however, plaintiff, having personal knowledge of a concerted effort by defendant to remove him from his position as a Newark Police Officer, engaged the representation of two (2) Police Union Representative to accompany plaintiff to the Police Surgeon's office on this date.

47. The two (2) Union Representatives engaged to accompany plaintiff on November 11, 1994 are identified as Detective Derrick Hatcher and Edward Brannigan, First Vice President and Secretary of the Fraternal Order of Police, respectively.  At all times relevant, both Union officials remained in the company of plaintiff during the entire time while at the Police Surgeon's Office on November 11, 1994.

11

48. On November 11, 1994, plaintiff was ordered by defendant COLON, Assistant Police Surgeon for defendant Police DEPARTMENT, to surrender his service weapon and submit to a drug screening for an alleged display of "hostility" while inside the Surgeon's Office.

49. The order by defendant COLON, directing plaintiff submit to a drug urinalysis, was illegal insofar that said order violated General Order 89-2, Drug Screening Policy of the Newark Police Department, dated May 1, 1994. Said Order clearly instructs/defines when drug testing should be administered to all Newark Police Officers. As defined and quoted under "POLICY" of said General Orders, "In balancing the public right to privacy, urinalysis will be administered only where there is a reasonable, individualized suspicion to believe that an individual employee (sworn or civilian) is illegally using drugs."

50. Defendant COLON willingly participated in the ongoing conspiracy to unlawfully remove plaintiff from his position as a Police Officer. On November 11, 1994, defendant COLON proffered a two page administrative submission to defendant POLICE DEPARTMENT, wherein he alleged that plaintiff exhibited "excessive hostility," and that he had therefore ordered the plaintiff to submit to a drug urinalysis. Defendant COLON amplified his role in the conspiracy to remove plaintiff from his position as a Newark Police Officer by submitting a second false administrative submission on January 26, 1995, some two months after his initial submission to defendant POLICE DEPARTMENT, wherein defendant COLON alleged that plaintiff had caused serious alarm while at the Police Surgeon's Office on November 11, 1994.

51. Defendant COLON further amplified his role in the conspiracy by defendants to eliminate plaintiff's employments as a Newark Police Officer. After plaintiff submitted to

the ordered drug screening, and the results of same were proven negative for any adulterants whatsoever, and after plaintiff was found to be psychologically fit, defendant COLON then ordered/caused plaintiff to undergo additional psychological testing by defendant GULLER, which plaintiff did on March 7, 1995.

52. Prior to defendant GULLER having interviewed plaintiff, defendant COLON willingly engaged in a conspiracy with defendant GULLER to terminate plaintiff's employment. In furtherance of this conspiracy, defendant COLON verbally supplied defendant GULLER with false information relating to plaintiff.

53. On or about March 14, 1995, defendant GULLER rendered a written negative psychological opinion concerning plaintiff to defendant POLICE DEPARTMENT. In addition to defendant GULLER's negative opinion, defendant GULLER recommended that defendant POLICE DEPARTMENT sever plaintiff's employment as a Newark Police Officer due to his "professional opinion" that plaintiff was "unfit for duty."

54. In May, 1996, plaintiff and another African-American Police officer, Louis Smith, Jr., complained via a criminal complaint filed with the Newark Police Department, that a Caucasian Police Lieutenant, defendant J. O'CONNOR, called Police Officer Smith a "watermelon boy." Both plaintiff and Officer Smith were subsequently transferred to different stations, and defendant O'CONNOR was permitted maintain his assignment.

55. In or about May, 1996, defendant J. O'CONNOR began a pattern of harassment against plaintiff. Defendant J. O'Connor knowingly and willingly acted with malice towards plaintiff by, among other things, filing a false police report with the Internal Affairs Division of defendant POLICE DEPARTMENT, accusing plaintiff of having made

"threats" upon certain individuals employed by defendant CITY during an alleged conversation in the Prisoner Processing Division.

56. Defendant UNDERWOOD willfully engaged himself in a conspiracy to defame, harass, embarrass or otherwise cause plaintiff serious and irreversible harm in that he knowingly elicited said false statement from defendant J. O'CONNOR to assist his repeated efforts to have plaintiff indicted by the Essex County Prosecutor's Office. Defendant UNDERWOOD acted with malice towards plaintiff in that he used his official capacity on at least three separate occasions to have plaintiff either arrested or indicted by law enforcement officials.

57. On or about May 12, 1996, plaintiff received a disciplinary notice from the Deputy Chief of the Internal Affairs Division, defendant SANTIAGO, ordering plaintiff to attend a disciplinary hearing which sought plaintiff's removal from office as a Newark Police Officer.  A hearing was held on September 3, 1996, wherein plaintiff's employment was terminated.

58. On or about May 12, 1996, plaintiff received written notification from defendant POLICE DEPARTMENT which ordered plaintiff to appear for a disciplinary hearing on September 3, 1996, which sought to remove plaintiff from his position as a Newark Police Officer.  Plaintiff attended said disciplinary hearing.  A disciplinary "tribunal," consisting of defendants RANKIN, McQUIRE and M. O'CONNOR, knowingly and purposefully upheld the false departmental charges proffered by defendant POLICE DEPARTMENT against plaintiff, despite the overwhelming evidence against defendant POLICE DEPARTMENT.

59. Defendants RANKIN, McQUIRE and M. O'CONNOR voted unanimously, as members of a disciplinary "tribunal" of defendant POLICE DEPARTMENT to terminate the employment of plaintiff as "unfit for duty." In doing so, they acted in furtherance of the conspiracy to terminate plaintiff's employment, causing plaintiff to suffer immediate financial harm as a result of their intentional and deliberate actions. Defendants RANKIN, McQUIRE AND M. O'CONNOR acted with malice, ill will and hatred towards plaintiff, in that they willfully conspired to violate plaintiff's due process right to a fair and impartial departmental hearing.

60. Defendant CASTELLANOS promulgated a legal memorandum to defendant POLICE DEPARTMENT in or about 1996, and caused said memorandum to be dispersed throughout defendant POLICE DEPARTMENT. The contents of this memorandum were established by supervisory personnel of defendant POLICE DEPARTMENT to follow when filing administrative charges against subordinate officers, as required by N.J.S.A. 40A:14-147, also commonly known as the "45-day rule." Defendant CASTELLANOS gave legal authorization to defendant POLICE DEPARTMENT to proceed with "stale" disciplinary charges against plaintiff on September 3, 1996. Defendant CASTELLANOS further conspired and acted to prevent witnesses from testifying on behalf of plaintiff at his Office of Administrative Law hearing.

61. Defendant TUNIS conspired with defendant CASTELLANOS and other defendants and their agents to prevent witnesses from testifying on behalf of plaintiff at his Office of Administrative Law hearing.

62. Defendant BONGERMINO was assigned to the Internal Affairs Division of defendant POLICE DEPARTMENT and willfully engaged himself in conspiracy to terminate the employment of the plaintiff by knowingly supplying false information relating to plaintiff's personnel records with defendant POLICE DEPARTMENT. Defendant BONGERMINO made a written recommendation to defendant POLICE DEPARTMENT to terminate plaintiff.

63. Throughout the relevant time period, approximately from 1990 until his ultimate determination, plaintiff wrote and submitted numerous internal reports documenting and complaining of unlawful and discriminatory actions, behaviors, and policies within defendant POLICE DEPARTMENT.

64. Defendants, under color of law and the cloak of their official positions, undertook the aforementioned actions to ensure plaintiff's removal as a Police Officer in the manner set forth herein, because he is African-American and in retaliation for plaintiff's exercise of his right to free speech and to petition governmental authorities for the redress of grievances, as is set forth herein.  Defendants, under color of law and the cloak of their official positions, further provided plaintiff with disparate treatment and retaliated against him for reporting the unlawful and discriminatory conduct of other Police Officers.

65. Plaintiff's exercise of his right to free speech and to petition governmental authorities for the redress of grievances was non-disruptive and addressed matters of public concern.

66. Plaintiff's actions, in exercising his right of free speech and to petition governmental authorities for the redress of grievances, were protected activities under the Constitution and laws of the United States and the State of New Jersey, and ones which plaintiff could undertake without fear or reprisal or retribution.

67. Plaintiff further avers that defendants have denied him benefits merely because he exercised constitutionally protected rights.

68. The actions of defendants and those acting on their behalf and at their request, were wrongful, willful, unlawful, intentional, punitive, malicious, retaliatory and involved premeditated indifference toward plaintiff's rights.

69. Defendants' actions, as complained of herein, are pretextual and cannot otherwise be justified.

70. Plaintiff alleges that similarly situated white Police Officers where not treated in the same fashion.

71. Defendants CITY and POLICE DEPARTMENT are liable for the actions and inactions of the individual defendants under agency guidelines. Consequently, the individual defendants' actions constituted, and were pursuant to, official CITY and POLICE DEPARTMENT policies, practices, customs, and color of law.

## CAUSES OF ACTION

### COUNT ONE

72. Plaintiff repeats and realleges every allegation set forth in paragraphs 1-71 as if set forth herein.

17

73. Plaintiff contends that the actions and omissions of defendants and their agents, engaged in under the color of law, are arbitrary, capricious, unlawful and motivated by no legitimate purpose, but rather are designed for purposes other than that properly required by statute, ordinance or regulation, including but not limited to discrimination, intimidation, harassment, malice, reprisal and retribution.

74. The actions and omissions of defendants and their agents, engaged in under color of law, are not a legitimate exercise of municipal authority nor a proper means to achieve any legitimate public purpose.

75. The actions and omissions of defendants and their agents, as complained of herein and engaged in under the color of law constitute a violation of plaintiff's rights to due process and to equal protection of the law guaranteed to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

76. Defendants have thereby violated 42 U.S.C. §§ 1983 and 1985.

77. By reasons of the foregoing actions and omissions of defendants and their agents, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, embarrassment, economic loss, has been made emotionally and physically ill, and has suffered and continues to suffer damage to his reputation and standing in the community. He has been and continues to be otherwise damaged.

78. By reason of the foregoing, plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

18

## COUNT TWO

79. Plaintiff repeats and realleges every allegation in paragraphs 1 through 78, as if set forth herein.

80. Plaintiff contends that the actions and omissions of defendants and their agents, engaged in under the color of law, are arbitrary, capricious, unlawful and motivated by no legitimate purpose, but rather are designed for purposes other than that properly required by statute, ordinance or regulation, including but not limited to discrimination, intimidation, harassment, malice, reprisal and retribution.

81. The actions and omissions of defendants and their agents, engaged in under the color of law, are neither a legitimate exercise of municipal authority not a proper means to achieve any legitimate purpose.

82. The actions and omissions of defendants and their agents, engaged in under the color of law, constitute a gross misuse of power possessed by defendants under law.

83. The actions and omissions of defendants and their agents, as complained of herein and engaged in under the color of law, also deprive plaintiff of rights guaranteed to him under other Amendments to the Constitution of the United States, including the First and Ninth Amendments.

84. Defendants have thereby violated 42 U.S.C. §§ 1983, and 1985.

85. By reason of the foregoing actions and omissions of defendants and their agents, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, embarrassment, economic loss, has been made emotionally and

19

physically ill and has suffered and continues to suffer damage to his reputation and standing in the community.  He has been and continues to be otherwise damaged.

86. As a result of the defendants' actions, plaintiff has become entitled to an award of compensatory and punitive damages and in amount to be determined by a jury at trial, with interest, costs and disbursements, and damages pursuant to 42 U.S.C. § 1988.

## **COUNT THREE**

87. Plaintiff repeats and realleges every allegation contained in paragraphs 1-86, as if set forth herein.

88. In doing the actions and things complained of herein, defendants and their agents were conspirators actively engaged in a scheme and conspiracy designed and intended to deny and deprive plaintiff of rights guaranteed him under the Constitution and laws of the United States in violation of 42 U.S.C. §§ 1983, 1985 and 1988.

89. Said acts were purposeful and intentional.

90. By reason of the foregoing actions and omissions of defendants and their agents, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, embarrassment, economic loss, has been made emotionally and physically ill and has suffered and continues to suffer damage to his reputation and standing in  the community.  He has been and continues to be otherwise damaged.

91.  For the foregoing reasons, plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

20

## COUNT FOUR

92. Plaintiff repeats and realleges every allegation contained in paragraphs 1-91 as if set forth herein.

93. In doing the actions and things complained of herein, defendants and their agents were conspirators actively engaged in a scheme and conspiracy designed and intended to prevent the plaintiff from lawfully and diligently performing his job as a Newark Police Officer. To wit, the defendants and their agents penalized and acted in retribution against plaintiff for attempting to prevent and correct unlawful behavior and events within defendant POLICE DEPARTMENT.

94. Said acts by defendants and their agents were objectively unreasonable, reckless, purposeful and intentional.

95. By reason of the foregoing actions and omissions of defendants and their agents, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, embarrassment, economic loss, has been made emotionally and physically ill and has suffered and continues to suffer damage to his reputation and standing in the community. He has been and continues to be otherwise damaged, pursuant to 42 U.S.C. §§1983 and 1988.

96. For the foregoing reasons, plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

## COUNT FIVE

97. Plaintiff repeats and realleges every allegation contained in paragraphs 1-96, as if set forth herein.

98. Plaintiff alleges that the foregoing actions by defendants and their agents violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. in that defendants' actions constitute unlawful employment practices because of retaliation and reprisal, in that defendants and their agents have discriminated against plaintiff and undertaken the complained of actions because he filed numerous internal reports alleging unlawful acts and publicly spoke out against said acts after his reports were ignored.

99. By its actions, defendants and their agents treated plaintiff differently from other employees on account of retaliation and reprisal and discriminated against him in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq..

100.    Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can their actions be otherwise justified under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.. Any alleged non-discriminatory reason is nothing more than a pretext adopted so that defendants and their agents could attempt to mask their actions.

101.    Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

102.    By reason of defendants' actions and inactions, whereby defendants and their agents have engaged in unlawful discriminatory practices based upon retaliation

and reprisal, plaintiff has been severely damaged. Plaintiff has suffered loss of economic benefits and salary. Plaintiff has also been damaged physically and emotionally. He has developed anxiety, depression and emotional stress. The allegations have been so upsetting to plaintiff that he has developed various physical and emotional symptoms. Because of the stress, plaintiff's physical and mental health are progressively declining.

103.     In addition, plaintiff has also suffered embarrassment, humiliation and damage to his reputation. Because of the actions alleged, plaintiff's self-esteem and confidence have declined. Furthermore, plaintiff has also incurred attorney's fees, in order to rectify the situation.

104.     Because of the actions complained of, plaintiff has become entitled to appropriate injunctive and monetary relief, including but not limited to, reinstatement; an expungement of all discriminatorily and unlawfully motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon; and an award of attorney's fees, expert fees, and costs and disbursements, and damages pursuant to 42 U.S.C. § 1988.

## COUNT SIX

105.     Plaintiff repeats and realleges every allegation contained in paragraphs 1-104 as if set forth herein.

106.     Plaintiff alleges that the foregoing actions by defendants and their agents, which occurred subsequent to plaintiff's filing internal reports, speaking in public, and filing his initial Charge of Discrimination, violate N.J.S.A. 10:5-1 et seq., the New Jersey

Law Against Discrimination (hereinafter "LAD"), in that defendants' actions constitute unlawful employment practices because of retaliation and reprisal, in that defendants and their agents have discriminated against plaintiff and undertaken the complained of actions because he attempted to prevent and correct unlawful behavior and practices within defendant POLICE DEPARTMENT.

107.    By their actions, defendants and their agents treated plaintiff differently from other employees on account of retaliation and reprisal and discriminated against him in compensation, terms, conditions and privileges of employment in violation of LAD.

108.    Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can their actions be otherwise justified under LAD.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendants and their agents could attempt to mask their actions.

109.    Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

110.    By reason of defendants' actions and inactions, whereby defendants and their agents have engaged in unlawful discriminatory practices based upon retaliation and reprisal, plaintiff has been severely damaged.  Plaintiff has suffered loss of economic benefits and salary.  He has also been damaged physically and emotionally.  He has developed anxiety, depression, and emotional stress.  The actions alleged have been so upsetting to plaintiff that he has developed various physical and emotional

symptoms. Because of the stress, plaintiff's physical and mental health are progressively declining.

111.    In addition, plaintiff has also suffered embarrassment, humiliation and damage to his reputation. Because of the actions alleged, plaintiff's self-esteem and confidence have declined. Furthermore, plaintiff has also incurred attorney's fees in order to rectify the situation.

112.    Because of the actions complained of, plaintiff has become entitled to appropriate injunctive and monetary relief, including but not limited to, reinstatement; an expungement of all discriminatorily and unlawfully motivated records; compensatory damages, in an amount to be determined at trial, together with appropriate interest thereon; and an award of attorney's fees, expert fees, and costs and disbursements, and damages pursuant to 42 U.S.C. § 1988.

## COUNT SEVEN

113.    Plaintiff repeats and realleges every allegation contained in paragraphs 1-112, as if set forth herein.

114.    Defendants and their agents unlawfully retaliated against plaintiff for filling internal complaints and administrative submissions, speaking publicly, and filing his initial Charge of Discrimination in an attempt to prevent and correct unlawful policies, practices, and behavior within defendant POLICE DEPARTMENT and of City of Newark Police Officers.

115. Such intentional and purposeful actions violated N.J.S.A. 34:19-3, the Conscientious Employees Protection Act (hereinafter "CEPA").

116. Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

117. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under CEPA. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants and their agents could attempt to mask their actions.

118. By reason of defendants' actions and inactions, whereby defendants and their agents engaged in unlawful discriminatory practices based upon retaliation and reprisal, plaintiff has been severely damaged. Plaintiff has suffered loss of economic benefits and salary. Plaintiff has also been damaged physically and emotionally. He has developed anxiety, depression, and emotional stress. The actions alleged have been so upsetting to plaintiff that he has developed various physical and emotional symptoms. Because of the stress, plaintiff's physical and mental health are progressively declining.

119. In addition, plaintiff has also suffered embarrassment, humiliation and damage to his reputation. Because of the actions alleged, plaintiff's self-esteem and confidence have declined. Furthermore, plaintiff has also incurred attorney's fees, in order to rectify the situation.

120. Because of the actions complained of, plaintiff has become entitled to appropriate injunctive and monetary relief, including, but not limited to, reinstatement;

an expungement of all discriminatorily and unlawfully motivated records; compensatory and punitive damages, in an amount to be determined at trail, together with appropriate interest thereon; and an award of attorneys fees, expert fees, and costs and disbursements, and damages pursuant to 42 U.S.C. § 1988.

## COUNT EIGHT AGAINST DEFENDANTS CITY AND POLICE DEPARTMENT

121.   Plaintiff repeats and realleges every allegation contained in paragraphs 1-120, as if set forth herein.

122.   Defendants CITY and POLICE DEPARTMENT authorized, tolerated and ratified the actions and omissions herein detailed by failing to properly control, restrict, discipline, and supervise  their officials; in failing to properly instruct and educate their officials; in failing to hire competent personnel; and in failing to take the necessary steps to prevent the foreseeable occurrences complained of herein.

123.   Defendants CITY and POLICE DEPARTMENT further had a custom, practice, or policy of allowing City of Newark Police Officers to engage in illegal conduct without correcting their behavior, and punishing those members of the POLICE DEPARTMENT who reported said illegal conduct, or other conduct in violation of the City of Newark POLICE DEPARTMENT's rules and regulations.

124.   By demonstrating such deliberate indifference to plaintiff's Constitutional rights, defendants CITY and POLICE DEPARTMENT have exhibited the presence of a custom, practice and policy which proximately caused all damage to the plaintiff, in violation of 42 U.S.C. §§ 1983, and 1985.

27

125.    By reason of the foregoing actions and omissions of defendants and their agents, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, embarrassment, economic loss, has been made emotionally and physically ill and has suffered and continues to suffer damage to his reputation and standing in the community.  He has been and continues to be otherwise damaged.

126.    By reason of the foregoing, plaintiff is entitled to an award of compensatory and punitive damages in an amount to be determined by jury at trial, with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

Respectfully Submitted,

BIANCHI & BIANCHI

By: Robert A. Bianchi, Esq. (9388)
Attorneys for the Plaintiff

80 Orchard Street
Bloomfield, New Jersey 07003
973-680-9900

Dated:  February 12, 2001

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

BIANCHI & BIANCHI

By: Robert A. Bianchi, Esq. (9388)
Attorneys for the Plaintiff

80 Orchard Street
Bloomfield, New Jersey 07003
973-680-9900

Dated:  February 12, 2001

**WHEREFORE** plaintiff, DARREN NANCE, respectfully requests judgment against

defendants as follows:

a.  that the Court grant appropriate injunctive relief restraining defendants, their

agents and all persons acting in concert with them or on their behalf, from continuing to

engage in the type of activity complained of herein;

b.  that the Court order defendants to reinstate plaintiff into the position of Police

Officer in the City of Newark;

c.  on the first count, an award of compensatory and punitive damages as against

all defendants in an amount to be determined by a jury at trial, together with interest,

costs and disbursements, and damages pursuant to 42 U.S.C. § 1988;

d.  on the second count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

e.  on the third count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

f. on the fourth count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

g. on the fifth count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

h.  on the sixth count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

i.  on the seventh count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

j.  on the eight count, an award of compensatory and punitive damages as against all defendants in an amount to be determined by jury at trial, together with interest, costs, and disbursements, and damages pursuant to 42 U.S.C. § 1988.

k.  an award of reasonably attorney's fees together with the costs and

disbursements of this action, and damages pursuant to 42 U.S.C. § 1988.

l.  such other and further relief as this Court deems just and proper.

Respectfully submitted,

BIANCHI & BIANCHI

By: Robert A. Bianchi, Esq. (9388)
Attorneys for the Plaintiff

80 Orchard Street
Bloomfield, New Jersey 07003
973-680-9900

Dated:  February 12, 2001

## VERIFICATION OF COMPLAINT

Darren Nance, being of full age and duly sworn, certifies that I have reviewed the contents of the Verified Complaint filed herein.  The facts set forth herein are true from my own personal knowledge.  Further, I certify that if any of the facts alleged in the Verified Complaint are shown to be false, I am subject to punishment.

Darren Nance

Sworn to and Subscribed
Before me on this 12th
Day of February, 2001.

Robert A. Bianchi, Esq.
Attorney at Law of the State of New Jersey