NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DARREN M. NANCE, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| | : | |
| CITY OF NEWARK, NEWARK POLICE | : | Civil Action No. 97-CV-6148 (DMC) |
| DEPARTMENT, JOSEPH J. SANTIAGO, | : | |

DARREN M. NANCE,                                    :

                   Plaintiff,                       :

v.                                                  :

                                                    :

CITY OF NEWARK, NEWARK POLICE:
DEPARTMENT, JOSEPH J. SANTIAGO,:
individually and in his official capacity as a City
of Newark Police Officer, THOMAS C.:
O'REILLY, individually and in his official:
capacity as a City of Newark Police Officer,:
ROBERT K RANKIN, JR., individually and in
his capacity as a City of Newark Police Officer,:
MITCHELL McQUIRE, individually and in his:
official capacity as a city of Newark Police:
Officer, MICHAEL O'CONNOR, individually:
and in his official capacity as a City of Newark:
Police Officer, JAMES DAVID O"CONNOR,:
individually and in his official capacity as a City:
of Newark Police Officer; WILLIE E.:
UNDERWOOD, individually and in his official:
capacity as a City of Newark Police Officer,:
IRVING B. GULLER, individually and as an:
agent of the City of Newark Police Department,:
JOSE COLON, individually and in his official:
capacity as a City of Newark Police Officer,:
CHADRAKANT PATEL, individually and as:
an agent of the City of Newark Police:
Department, JAMES E. TUNIS, individually:
and in his official capacity as a City of Newark:
Police Officer, ISABELLA CASTELLANO,:
individually and in her official capacity as an:
agent for the City of Newark, VINCENT:
BONGERMINO, individually and in his:
capacity as a City of Newark Police Officer,    :

                                                    :

                   Defendants.                      :

<u>DENNIS M. CAVANAUGH, U.S. District Judge</u>

This matter comes before the Court upon cross motions for summary judgment by Darren Nance ("Plaintiff" or "Nance") and individually-named Defendants, the City of Newark ("Newark") and the Newark Police Department ("NPD"), (collectively, the "Defendants"). This Court did not hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the parties' submissions, and based upon the following, it is the finding of this Court that the Defendants' motion for summary judgment is denied in part and granted in part. Plaintiff's motion for summary judgment is denied in its entirety.

**BACKGROUND**

On December 18, 1997, Darren Nance filed his Complaint against the City of Newark, NPD, several named individuals employed by the City of Newark and the NPD, Dr. Irving B. Guller and Dr. Chadrakant Patel. In his Third Amended Complaint, Plaintiff alleges eight counts of violations of the United States Constitution, the New Jersey Law Against Discrimination ("NJLAD") and the New Jersey Conscientious Employee Protection Act ("NJCEPA").

The City of Newark employed Plaintiff, an African American male, as a police officer from October 16, 1989, until September 3, 1996, at which time Plaintiff's employment was terminated. During the period of his employment, numerous disciplinary proceedings were brought against Plaintiff; some of which resulted in Plaintiff's temporary suspension from duty. Plaintiff alleges that the suspensions, disciplinary actions and termination from the NPD were in retaliation for Plaintiff's persistent complaints to his superiors about disparate treatment and double standards afforded minority police officers, including himself.

Plaintiff filed a discrimination suit against Newark, the NPD and several of his superiors

in the New Jersey Superior Court, Essex County, in December, 1993, alleging that the Defendants therein conspired amongst themselves to deny Plaintiff due process of law in their efforts to terminate his employment by generating false criminal charges and meritless disciplinary actions against him.

Plaintiff alleges his suit precipitated further retaliatory conduct such as forcing him to submit to drug screening and psychological testing. It is Plaintiff's assertion that Defendants conspired to render a negative psychological report in order to silence him and as a pretext to terminate his employment with the NPD.

Defendants respond that the disciplinary actions against Plaintiff and his ultimate termination occurred because of his repeated violations of the NPD's rules and regulations as well as his failure to conduct himself in a manner required of a NPD Police Officer.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a party's motion for summary judgment may be granted where the pleadings, supporting papers, affidavits and admissions on file, when viewed with all inferences in favor of the non-moving party, demonstrate that there is no issue of material fact and that the movant is entitled to judgment as a mater of law. FED. R. CIV. P. 56; see also Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989).

Particularly, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the non-moving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988), cert. den. 488 U.S. 87 (1988). An issue is "genuine" if a reasonable jury could possibly hold in a non-movant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A fact is material if it

influences the outcome under the governing law.  Id. at 248.

The party seeking summary judgment always bears the initial burden of production, i.e., of making a *prima facie* case that it is entitled to summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This may be done by demonstrating that the non-moving party has not produced evidence relating to an essential element of an issue for which it bears the burden of proof at trial.  Celotex Corp., 477 U.S. at 322-23.  Once this showing is made, the burden shifts to the non-moving party, who must demonstrate facts supporting each element for which it bears the burden of proof as well as establish the existence of genuine issues of material fact.  Id. at 324.  At the summary judgment stage, however, the Court may not weigh the evidence or make credibility findings, which is the work of the fact finder.  Petruzzi's IGA v. Darling-Del., 998 F.2d 1224, 1230 (3d Cir. 1993).

In opposing summary judgment, the non-moving party may not "rest upon mere allegations, general denials, or . . . vague statements."  Quiroga v. Hasbrow, Inc., 934 F.2d 497, 500 (3d Cir. 1990).  In other words, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## DISCUSSION

Claims Against Individual Defendants in their Personal Capacities

*Qualified Immunity*

The individually named Defendants argue that the claims against them should be dismissed because they are entitled to qualified immunity.  According to the Supreme Court of the United States, "government officials performing discretionary functions generally are

4

shielded from liability for civil damages" unless their "conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Harlow provides a three-step analysis for evaluating the qualified immunity defense. The first inquiry is whether a plaintiff has alleged a violation of a constitutional right. Pro v. Donatucci, 81 F.3d 1283, 1287 (3d Cir. 1996). If so, it must then be determined whether that right was clearly established at the time of the defendant official's actions. Id. In order to be clearly established, the "right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The final step is to ascertain whether a reasonable official, in the defendant's shoes, would have known that his or her actions violated these clearly established rights. Grant v. City of Pittsburgh, 93 F.3d 166, 121 (3d Cir. 1996). The Third Circuit directs that the actions of each defendant must be examined individually. Id.

Plaintiff urges this Court to deny the qualified immunity protection to the individual Defendants. Nance asserts that if his allegations are believed, a defense of qualified immunity is inappropriate since it is clear that a jury could believe that he has been intentionaly discriminated and retaliated against in violation of his constitutional rights. Plaintiff insists that genuine issues of fact exist for a jury to decide. In making this argument, Plaintiff explains that a jury could find that the individual Defendants conducted a sham hearing based upon false allegations in retaliation for Plaintiff having engaged in protected activity. Essentially, Plaintiff argues that the actual motivation of the individual Defendants to terminate his employment makes summary judgment unavailable to the individual Defendants.

Plaintiff offers no facts that evidence intent on the part of the individual Defendants to deprive him of any constitutional protections   In opposing summary judgment, the non-moving party may not "rest upon mere allegations, general denials, or . . . vague statements." Quiroga v. Hasbrow, Inc., 934 F.2d 497, 500 (3d Cir. 1990).  In other words, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Taking each individual Defendant in turn, Plaintiff alleges that Defendant Joseph H. Santiago, then Deputy Chief in charge of the Internal Affairs Division ("IAD") of the NPD "ordered that an investigation be commenced against . . . [P]laintiff" and "ordered [P]laintiff to attend a disciplinary hearing which sought [P]laintiff's removal from office as a Newark Police Officer." (See Third Amended Verified Complaint).

Defendant Santiago submits that as the Deputy Chief of IAD, it was within his discretion and authority to order investigations of police officers' misconduct and to require that police officers charged with violations of departmental rules and regulations attend disciplinary hearings to answer those charges.  Santiago maintains that his actions were based solely on his official capacity and pursuant to his duty as the Deputy Chief of IAD.  Plaintiff offers no evidence to the contrary.  As such, these actions alone cannot form the basis of an individual capacity claim.  Accordingly, Defendant Santiago's motion for summary judgment is granted.

With respect to Defendant Thomas C. O'Reilly, the Chief of the NPD at all times relevant, Plaintiff makes no specific factual allegations regarding O'Reilly's conduct.  O'Reilly is entitled to qualified immunity and, accordingly, his motion for summary judgment is granted.

Defendants Robert K. Rankin, Jr., Michael O'Connor and Mitchell McQuire were Deputy

Chiefs in the NPD.  Together, they formed the disciplinary tribunal which heard the case against Plaintiff and recommended the termination of Plaintiff's employment.  While Plaintiff alleges that the charges leading to his termination were false and without merit and further believes the recommendation of Rankin, McQuire and O'Connor was improper, this alone cannot sustain an individual capacity claim.  When the tribunal decided to recommend termination of Plaintiff's employment, Rankin, McQuire and O'Connor were acting solely in their official capacities.  Plaintiff offers no evidence to the contrary.  Accordingly, Defendants Rankin, McQuire and O'Connor could not have known that their mere recommendation, a duty with which they were charged, would violate clearly established constitutional rights of Plaintiff.  Therefore, the motions of Rankin, McQuire and O'Connor are granted.

Plaintiff alleges that Defendant James David O'Connor ("J. O'Connor") filed a report with IAD as part of a pattern of harassment against Plaintiff.  As a police officer, it is within J. O'Connor's discretion and authority to report misconduct of fellow officers to IAD for investigation.  O'Connor maintains that he was acting solely in his official capacity and that the report regarding Plaintiff was neither malicious nor false nor an act of harassment.  Again, Plaintiff offers no evidence to the contrary.  Therefore, the motion of Defendant            J. O'Connor is granted.

With respect to Defendant Willie Underwood, a Lieutenant of the NPD at all times relevant hereto, Plaintiff alleges that Underwood harassed and embarrassed him by seeking to have him indicted by the Essex County Prosecutor's Office.  As a police officer it is within Underwood's discretion and authority to report suspected or alleged criminal acts of other police officers to the proper authorities for further investigation and possible indictment.  Underwood

maintains that he was acting solely in his official capacity and that his actions regarding Plaintiff were neither malicious, nor false, nor were they acts of harassment.  Again, Plaintiff offers no evidence to the contrary.  Accordingly, at the time of the report to the Essex County Prosecutor's Office, Defendant Underwood could not have known that merely reporting the criminal act of another officer, a duty with which he is charged as a police officer, violated clearly established constitutional rights of the Plaintiff.  Therefore, Underwood's motion is granted.

      Turning to Defendant Dr. Jose Colon, the NPD's Assistant Police Surgeon at all times relevant hereto, Plaintiff alleges that Colon ordered him "to surrender his service weapon and submit to a drug screening."  Plaintiff also alleges that Colon "proffered a two page administrative submission" wherein Colon stated that Plaintiff had exhibited "excessive hostility."  It is Plaintiff's position that Colon participated in the alleged conspiracy to eliminate Plaintiff's job with the NPD by ordering additional psychological and drug testing even though Plaintiff insists that he had already been tested.

      Dr. Colon maintains that it is within his discretion, as Assistant Police Surgeon of the NPD, to order psychological testing and drug screening whenever it is believed necessary. Therefore, Colon acted solely in his official capacity and his actions regarding Plaintiff were reasonable and based on observable hostility and otherwise unacceptable behavior by Plaintiff. Therefore, Colon could not have known that merely exercising his discretion as Assistant Police Surgeon violated Plaintiff's clearly established constitutional rights.  Defendant Colon's motion is granted.

      With respect to Defendant James E. Tunis, Plaintiff alleges that Tunis, then assigned as a liaison with the Office of the Police Surgeon (also referred to as the Medical Services Office),

authorized and then ordered Plaintiff to return to work on "light duty" status ahead of schedule following an on-the-job injury.  In addition, Plaintiff alleges that Tunis conspired to "prevent witnesses from testifying on [Plaintiff's] behalf at the disciplinary hearing."

Plaintiff does not dispute that it is within Tunis's discretion to coordinate the medical treatment and the return to work of injured NPD officers  Tunis maintains that he acted solely in his official capacity and denies that he conspired to prevent witnesses from testifying on Plaintiff's behalf.  Plaintiff presents no evidence to refute Tunis' assertion.  Making general and vague allegations that Tunis conspired to deprive Plaintiff of his job is insufficient to withstand a motion for summary judgment.  Therefore, Defendant Tunis' motion is granted.

Plaintiff alleges that Defendant Isabella Castellanos "promulgated a legal memorandum" which authorized the NPD to "proceed with 'stale' disciplinary charges against [him]." Castellanos is the former Assistant Corporation Counsel for the City of Newark.  Plaintiff does not dispute that it was Castellanos' duty to prosecute the charges brought against police officers at the departmental level and to represent the City of Newark and the NPD.  Castellanos maintains that she acted solely in her official capacity as Assistant Corporation Counsel and that the City's decision to pursue the charges against Plaintiff was based on a fair reading of the record and a fair application of the attendant statutory provisions.  Once again, Plaintiff's unsubstantiated allegations that Castellanos conspired against him to deprive him of his employment are not sufficient to survive Defendants' motion for summary judgment.  Castellanos merely carried out her responsibilities in her role as Assistant Corporation Counsel for the City of Newark.  Accordingly, Defendant Castellanos' motion is granted.

Finally, Plaintiff alleges that Defendant Vincent Bongermino "suppl[ied] false

information relating to [P]laintiff's personnel records."  Plaintiff does not dispute that, as a police officer assigned to the IAD, Bongermino was responsible for investigating the personnel records of NPD officers and making recommendations based on his findings.  Bongermino states that he acted solely in his official capacity and that his investigation of Plaintiff's personnel file justified the recommendation to terminate Plaintiff's employment with NPD.  Plaintiff seeks to undermine Bongermino's IAD report and recommendation by pointing to minor inconsistencies and errors in the report.  Plaintiff suggests that these errors support his contention that the information in the report was "false."  The discrepancies do not, of themselves, establish intentional conspiratorial, discriminatory or retaliatory conduct on the part of Bongermino.   A §1983 action must be predicated on acts of the defendant which are either intentional or tantamount to intentional acts.  Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

Plaintiff offers no facts that evidence intent on the part of Bongermino.  Accordingly, Bongermino could not have known that merely reviewing a personnel file and making a recommendation based on that file review, a duty with which he was charged as a police offer in IAD, violated Plaintiff's clearly established constitutional rights.  Defendant Bongermino's motion is granted.

*Personal Liability Claims Against Individual Defendants*

Plaintiff also brings claims against the individual Defendants in their individual capacities under the NJLAD and NJCEPA[1].  Defendants concede that New Jersey courts have not squarely

---

[1]  Plaintiff concedes that there is no individual liability under Title VII of the Civil Rights Act of 1964.  The Title VII claims against the Defendants in their individual capacities are dismissed as a matter of law.

addressed the issue of personal liability under NJLAD.  However, Defendants do cite to <u>Hurley</u>

<u>v. Atlantic City Police Dept.</u>, 174 F.3d 95, 125 (1999), wherein the Third Circuit indicated  "that

there is insufficient reasons to predict that New Jersey would diverge from the federal scheme on

this point" and would therefore hold that direct liability for individual employees is not permitted

under NJLAD.

Plaintiff also cites <u>Hurley</u> for its dissent which states that there is an argument that the

term "employer" as used in the NJLAD is intended to include individuals acting on behalf of

their employer.  <u>Id.</u> at 139.   Plaintiff's reliance on the dissent in <u>Hurley</u>, which is not

precedential and has never been followed or adopted by any New Jersey  court, is not persuasive.

Plaintiff also attempts to frame his claims against the individual Defendants as claims for

aiding and abetting under the NJLAD, which is the exception to the rule that individual liability

for employees is not permitted under the statute.  The NJLAD's aiding and abetting provision

makes it unlawful "[f]or any person, whether an employer or an employee...to aid, abet, incite,

compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

<u>N.J.S.A.</u> 10:5-12(e).

A review of Plaintiff's Third Amended Verified Complaint reveals that Nance never

claims that any individual Defendant assisted in the allegedly discriminatory actions of the

individual Defendants.  Rather, Plaintiff affirmatively asserts that each Defendant actively

retaliated and discriminated against him.  In the Complaint, Nance fails to provide a single

instance where one Defendant aided or abetted the alleged discriminatory conduct against

Plaintiff.  Indeed, the allegations in the Complaint are that the Defendants directly conspired and

actively participated in illegal activities.  Therefore, the claims against the individually named

Defendants under the NJLAD are dismissed as a matter of law.

The NJCEPA's statute of limitations is set forth in N.J.S.A. § 34:19-5, which provides that violations of any provision of the act must be filed within one year.  The New Jersey Supreme Court has held that the statute begins running on the date of a plaintiff's actual termination.  <u>Alderiso v. Med. Ctr. of Ocean County, Inc.</u>, 167 N.J. 191 (2001).  Here, the NPD terminated Plaintiff on September 3, 1996.  Plaintiff filed his original complaint on December 18, 1997, two months after the one-year statute of limitations had run.

Plaintiff argues that Defendants have waived their statute of limitations defense because they failed to plead it as an affirmative defense in their answer to the Third Amended Verified Complaint.  The Third Circuit, however, has upheld grants of summary judgment on statute of limitations grounds despite the fact that the statute of limitations defense was not pled at an earlier stage of litigation.  <u>Cetel v. Kirwan Financial Group, Inc.</u>, 460 F.3d 494 (3d Cir. 2006).  In <u>Cetel</u>, the Defendants moved for summary judgment on statute of limitations grounds following the completion of discovery.  <u>Id</u>.  The Third Circuit found that the statute of limitations had not been waived because co-defendants had pled the statute of limitations as a defense.  According to the Third Circuit, the plaintiff, therefore, had adequate notice from the outset of the case that the timeliness of his claim was an issue.  The court stated:

> We will quickly dispose of a preliminary waiver issue Plaintiffs argue that when certain defendants filed their answers to the complaint they failed to raise the issue of the statute of limitations, . . . In essence, plaintiffs make a waiver argument.  The District Court rejected it, applying the statute of limitations to bar all pertinent claims against all defendants.  We review the District Court's decision for abuse of discretion and we will affirm on this point.  It is true that "parties should generally assert affirmative defenses early in litigation, so they may be ruled upon, prejudice

> may be avoided, and judicial resources may be conserved." However, there is no hard and fast rule limiting defendants' ability to plead the statute of limitations. Accordingly, affirmative defenses can be raised by motion, at any time (even after trial), if plaintiffs suffer no prejudice. Here, the District Court determined, and we agree, that plaintiffs suffered no undue prejudice because they had notice that the statute of limitations was an issue for the simple reason that other defendants had pleaded in their answer that the claims were time-barred. Because plaintiffs were on sufficient notice, it did not inhibit their ability to gauge and respond to all possible defenses.

Cetel, 460 F.3d at 506.

Here, Defendant Irving Guller pleaded the statute of limitations as an affirmative defense in his answers to the Plaintiff's Complaint, Second Amended Complaint and Third Amended Verified Complaint. Accordingly, Plaintiff had sufficient notice that the statute of limitations was an issue in this case. Nance's CEPA claim against the individually named Defendants is, therefore, dismissed as time-barred.

Claims Against Individual Defendants in their Official Capacities

Defendants request this Court to dismiss Plaintiff's official capacity claims against the individuals because an official capacity claim against a public employee where the government entity employing that individual is also named as a defendant is redundant. Defendants cite Kentucky v. Graham, 473 U.S. 159 (1985), for this proposition.

Plaintiff asserts that Defendants are misrepresenting the holding in Kentucky to this Court because that case arose in the context of counsel fees. In arguing that the claims against the individual Defendants in their official capacities should survive, Plaintiff explains that "it is clear that Kentucky does not hold that suits filed against municipalities as well as employees in their official capacity are redundant, but merely states that in an application for fees, plaintiff's (sic)

can seek the fees from the entity as against the employee in their official and not personal capacity."

In reviewing the holding in <u>Kentucky</u>, Plaintiff misinterprets the decision.  In <u>Kentucky</u>, the plaintiff brought  a § 1983 claim against the Commissioner of the Kentucky State Police, individually and as Commissioner, seeking damages for the alleged deprivation of federal constitutional rights.  Plaintiff's assertion that <u>Kentucky</u>'s holding is limited to the context of attorneys' fees is simply not accurate.  Time and again, the Supreme Court has held that the Commonwealth of Kentucky could not be responsible for fees because it was dismissed as a defendant, leaving only the individual defendant police officers in their personal capacity.  <u>Id.</u> at 163.  In other words, "[w]here a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."  <u>Id.</u> at 159.

To suggest that the holding in <u>Kentucky</u> says that claims against individuals in their official capacity and their employer are not redundant finds no support in the <u>Kentucky</u> decision.  It is no surprise that Plaintiff's brief cites to nothing in the <u>Kentucky</u> opinion indicating that a plaintiff's official capacity claims against the individual defendants should not be barred.  In fact, the holding in <u>Kentucky</u> indicates quite the opposite:

> There is no longer a need to bring official-capacity actions against local government officials, for under <u>Monell</u>, local government units can be sued directly for damages and injunctive or declaratory relief.

<u>Kentucky</u>, 473 U.S. at 167, n. 14.

Plaintiff's official capacity claims are essentially claims against the City of Newark, as

employer of the individual Defendants.  Therefore, Plaintiff's official capacity claims against the individual Defendants are redundant.  Accordingly, this Court grants Defendants' motion and dismisses Plaintiff's official capacity claims against the individual Defendants as a matter of law.

Claims against the Newark Police Department

Plaintiff's Section 1983, Section 1985, Title VII, NJLAD, NJCEPA and municipal liability claims against the NPD cannot be maintained because they essentially duplicate Plaintiff's claims against the City of Newark.  See Pahle v. Colebrookdale Township, 227 F.Supp.2d 361, 367 (E.D.Pa. 2002) (In § 1983 actions, "police departments cannot be sued in conjunction with municipalities because the police departments are merely administrative agencies of the municipalities--not separate judicial entities.").

In his moving papers, Plaintiff tacitly concedes that the federal claims brought against the NPD are redundant because the same claims are brought against the City of Newark.  Plaintiff, however, argues that the state law claims should persist.  He argues that citing Pahle is insufficient because it is a Pennsylvania case in which federal claims and Pennsylvania state law claims were dismissed as redundant because the plaintiff filed suit against a police department and the municipality in which it operates.  However, in PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808 (D.N.J. 1993), the District Court of New Jersey held:

> The Woodbridge defendants next contend that the Woodbridge Police Department is not a "person" under § 1983 and that, therefore, plaintiffs' § 1983 claims must be dismissed as to it. Defendants are correct.  The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.  Accordingly, plaintiffs' § 1983 claims will be dismissed as to the Woodbridge Police Department.

15

Id. at 825-26.

This Court agrees.  Accordingly, Plaintiff's federal claims must be dismissed as against the NPD because one cannot bring a § 1983 claim against a municipal police department.

Claims Against Dr. Irving Guller

Although not employed by the City of Newark, Dr. Irving Guller, a psychologist, performs evaluations of Newark's police officers as an independent contractor.  After evaluating Plaintiff, Dr. Guller issued a written report, concluding that Plaintiff was not psychologically suited to perform the role of police officer.

*Claims Arising Under 42 U.S.C. § 1983*

In Counts One and Two of the Third Amended Verified Complaint, Plaintiff alleges that Dr. Guller violated Plaintiff's constitutionally protected rights.  To establish liability under Section 1983, a plaintiff must show that the defendant violated the plaintiff's federal or constitutional or statutory rights, and thereby caused the complained of injury.  Elmore v. Cleary, 399 F.3d 261, 268 (3d Cir. 1998).  The essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state.  West v. Atkins, 487 U.S. 42, 49 (1941).

Plaintiff fails to provide any evidence whatsoever that Dr. Guller either reached an agreement with any party or acted under the authority of state law.  Further, Plaintiff has failed to establish that Dr. Guller violated any right secured by the Constitution or the laws of the United States.  Dr. Guller is a psychologist who earns his living by performing psychological evaluations.  He conducts  these evaluations for various state entities as an independent contractor.  He is not given any state authority or privileges.  Significantly, Dr. Guller does not

have the authority to hire or fire existing state employees.  Moreover, in this case, the decision to terminate Plaintiff rested solely with the NPD.  Dr. Guller did not have any power to make any decisions regarding Plaintiff's employment status.

Plaintiff has failed to offer any evidence that Dr. Guller violated Plaintiff's constitutional rights under 42 U.S.C. § 1983 and as such, Counts One and Two of Plaintiff's Third Amended Verified Complaint  must be dismissed against Dr. Guller.

Although Plaintiff relies on the Supreme Court decision in West v. Atkins, 487 U.S. 42, 55-56 (1988) in support of his position that a physician under contract can be considered a State actor for purposes of a Section 1983 action, the facts in West, are clearly distinguishable from the case here.  In West, the physician in question, Dr. Samuel Atkins, was a private physician who was paid $520,000 annually to operate two clinics each week at Central Prison Hospital, with additional amounts for surgery.  Id. at 44.  The Court relied on the traditional definition of acting under color of state law in requiring that the defendant in a Section 1983 action has exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  United States v. Classic, 313 U.S. 299, 326 (1941).

In West, the Court held that Dr. Atkins, a physician employed by the state of North Carolina to provide medical services to state prison inmates, acted under color of law for the purposes of Section 1983 because his duty to treat petitioner's injury was found to be fairly attributable to the State.  See West, 487 U.S. at 54 (1988).  In reaching its decisions, the Court stressed that the inmate must rely on prison authorities to treat his medical needs.

The facts in West are distinguishable from those in this case.  Here, Dr. Guller did not provide medical care on an ongoing basis to a prisoner.  The City of Newark retained Guller for a

17

fitness for duty examination of Plaintiff and to offer his independent judgment and recommendation.  Dr. Guller received no authorization and was under no obligation to provide treatment or ongoing care to Plaintiff.

Plaintiff fails to substantiate his claim that Dr. Guller violated 42 U.S.C. § 1983. Accordingly, Defendant Guller's motion for summary judgment on Counts One and Two of Plaintiff's Complaint is granted.

*Conspiracy Claims Against Dr. Guller*

A civil cause of action under 42 U.S.C. § 1985(3) arises when some otherwise defined federal right to equal protection of the laws, or of equal privileges and immunities under the laws is breached by a conspiracy in the manner defined by this section." See Great Am. Fed. Sav. & Loan Ass'n, v. Novotny, 442 U.S. 366 (1979).

To establish a violation of Section 1985(3), a plaintiff must prove: (1) that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action," Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), and (2) that the conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," Carpenter v. Scott, 463 U.S. 825, 833 (1983).

Plaintiff claims that Dr. Guller acted as part of a conspiracy against him because Plaintiff advocated on behalf of minority officers and as retaliation for his filing of a civil complaint against many of the Defendants before his termination with the NPD.  Plaintiff claims that: "Defendant Guller was part of a conspiracy against [me] that was aimed at [me] due to [my] advocating on behalf of minority officers and filing a civil complaint against many of the [D]efendants in this matter just before [my] termination with the police force."

18

Plaintiff's argument lacks factual support.  Plaintiff provides no evidence of any discriminatory animus on the part of Dr. Guller.  There is nothing in the record to support Plaintiff's allegations that Dr. Guller acted with any intent to conspire with others to deprive Plaintiff of his constitutional rights.  In opposing summary judgment, Plaintiff cannot "rest upon mere allegations, general denials, or . . . vague statements."  Quiroga v. Hasbrow, Inc., 934 F.2d 497, 500 (3d Cir. 1990).

Accordingly, Defendant Guller's motion for summary judgment is granted as to Count Three of Plaintiff's Complaint.

*Common Law Conspiracy Claims Against Dr. Guller*

In Count Four, Plaintiff alleges that Dr. Guller participated in a conspiracy designed and intended to prevent Plaintiff from lawfully and diligently performing his job as a Newark police officer.  A common law civil conspiracy requires a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means.  U.S. Small Bus. Admin. v. Straqtton, 2005 WL 3455897 (E.D. Pa. 2005).  Under the law, the principal element of a civil conspiracy is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage.  Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 633 (App. Div. 1993) (quoting Rostermund v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)).

Despite setting forth the requisite elements of proof under the law, Plaintiff offers no factual support of an agreement, an unlawful act or unlawful means as is required to support a cause of action for civil conspiracy.  Instead, Plaintiff argues that Dr. Guller conducted the psychological evaluation of Plaintiff in contravention of the NPD's fitness for duty guidelines.

These allegations are not relevant to the allegation of conspiracy because they do not evidence an agreement between two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means.

An unfavorable written psychological report does not give rise to a conspiracy cause of action without more.  Accordingly, Defendant Guller's motion for summary judgment as to Count Four of Plaintiff's Complaint is granted.

*Claims Under 42 U.S.C. 2000E against Dr. Guller*

In Count Five of Plaintiff's Complaint, Plaintiff alleges that Dr. Guller violated Title VII of the Civil Rights Act of 1964 as amended at 42 U.S.C. § 2000E *et seq,* which states:

> it shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national original; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000E(2)

It is undisputed that Dr. Guller was not at anytime Plaintiff's employer.  Further, Dr. Guller had no authority to hire or discharge any individual.  Guller acted only as a consultant and independent contractor, and therefore, these alleged civil rights violations cannot pertain to him. Plaintiff concedes that there can be no liability for Dr. Guller under Title VII.  Accordingly, Count Five of Plaintiff's Complaint is dismissed as against Dr. Guller.

——

_____*Claims Under the NJLAD Against Dr. Guller*

Dr. Guller's motion for summary judgment as to Count Six of Plaintiff's Complaint is granted for the reasons given by this Court for granting the other individual Defendants summary judgment on claims brought under the NJLAD.  This Court is persuaded that the term "employer" does not include individual employees or independent contractors.

*Claims Under the CEPA Against Dr. Guller*

The statute of limitations for claims under the NJCEPA provides that violations of any provisions of the act should be filed within one year.  The statute begins to run on the date of Plaintiff's termination.  Alderiso v. Med. Ctr. of Ocean County, Inc., 167 N.J. 191 (2001).  The NPD terminated Plaintiff in September of 1996.  Plaintiff filed his Complaint on December 18, 1997, two months after the statute of limitations had run.  Plaintiff's claims in Count Seven of his Complaint must, therefore, be dismissed as filed outside the statute of limitations..

Claims Against City of Newark

The City of Newark Defendant ("Newark") asserts that the Plaintiff has failed to allege sufficient facts to establish a violation of any of his federal constitutional rights.  Accordingly, Newark argues that there is no genuine issue of material fact to be determined by a jury and Newark is entitled to judgment as a matter of law on all of Plaintiff's federal Constitution-based claims.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.
> . .

42 U.S.C. § 1983.

‾‾‾‾‾‾Section 1983 provides a cause of action for the vindication of federal rights.  Graham v.

Connor, 490 U.S. 386, 393-94 (1989).  To succeed under Section 1983, Plaintiff must establish:

(1) that Defendant violated a right secured by the Constitution or laws of the United States, (2)

acted under color of state law in so doing, and (3) damages.  Sameric Corp. v. City of

Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

Section 1985 provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the
> purpose of depriving, either directly or indirectly, any person or
> class of persons of the equal protection of the laws, or of equal
> privileges and immunities under the law; or for the purpose of
> preventing or hindering the constituted authorities of any State or
> Territory from giving or securing to all persons within such State
> or Territory the equal protection of the laws; . . . in any case of
> conspiracy set forth in this section, if one or more persons engaged
> therein do, or cause to be done, any act in furtherance of the object
> of such conspiracy, whereby another is injured in his person or
> property, or deprived of having or exercising any right or privilege
> of a citizen of the United States, the party so injured or deprived
> may have an action for the recovery of damages occasioned by
> such injury or deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985(3).

To sustain a conspiracy claim under Section 1985(3), Plaintiff must establish: (1) a

conspiracy, (2) motivated by racial or class based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons of the equal protections of the laws, (3) an

act in furtherance of the conspiracy, and (4) an injury to person or property or the deprivation of

any right or privilege of a citizen of the United States.  See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

*Count One - Due Process and Equal Protection Claims*

As a preliminary matter, the due process protections of the Fifth Amendment apply to limit the conduct of federal officials; they do not apply to limit the conduct of municipal actors. See Bowman v. Twp. of Pennsauken 709 F.Supp. 1329, 1345 n. 23 (D.N.J. 1989) ("As plaintiffs have not alleged any action by the federal government, this Fifth Amendment challenge will not be considered.").  Here, Plaintiff has not alleged any wrongdoing on the part of any federal officials.  Therefore, this Court dismisses all claims made pursuant to the Fifth Amendment from this action.

The substantive component of the Fourteenth Amendment's Due Process Clause proscribes the deprivation of life, liberty and property.  U.S. Const. amend. XIV.  Defendants submit that Plaintiff fails to establish a constitutional right under the Fourteenth Amendment, or alternatively that no jury could find that Newark violated Plaintiff's rights of due process and equal protection.

State law creates the property rights protected by the Fourteenth Amendment.  Clark v. Township of Falls, 890 F.2d 611, 617 (3d Cir. 1989).  Thus, this Court must look to New Jersey law to determine what property interests Plaintiff enjoyed in his employment as a police officer. Under New Jersey law:

> [N]o permanent member or officer of the police department or
> force shall be removed from his office, employment or position for
> political reasons or for any cause other than incapacity,
> misconduct, or disobedience of rules and regulations established
> for the government of the police department and force, nor shall

23

> such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer.

N.J.S.A. § 40A:14-147.

It is clear that Plaintiff had a property interest in his position with the NPD.  Newark erroneously asserts that the Fourteenth Amendment protects only real property ownership.  This assertion finds no support in the law.  Rather, this Circuit has held that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational . . . or tainted by improper motive,'"  Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000), "or by means of government conduct so egregious that it 'shocks the conscience.'"  Collins v. Harker Heights, 503 U.S. 115, 128 (1992).

Newark argues that Nance has produced no evidence of any arbitrary abuse of power or denial of constitutional rights, much less one which was so egregious as to shock the conscience.  Newark  maintains that its conduct was not arbitrary and did not "shock the conscience" as a matter of law.  In arguing that summary judgment should be granted in their favor, the City of Newark submits that Plaintiff's opposition to its argument is self-serving, conclusory and fails to cite an issue of material fact.

In reviewing Plaintiff's submissions, it is clear that Newark is not entitled to summary judgment on the due process claim made by Plaintiff.  Giving Plaintiff the benefit of all appropriate inferences at this juncture, Plaintiff plainly asserts that Newark's employees  filed false allegations, condoned perjury, retaliated for protected First Amendment speech regarding

issues of public concern, having Plaintiff arrested for offenses that he did not commit, having

given a drug test in violation of departmental policy and having conducted a sham investigation

and trial with only a pretense of legitimacy.  Plaintiffs assertions are sufficient to establish a

disputed issue of material fact as to the substantive due process claim.  As such, the City of

Newark is not entitled to summary judgment on his due process claim in Count One.

Turning to equal protection, in order to bring a successful claim, Plaintiff must be able to

prove the existence of purposeful discrimination.  Batson v. Kentucky, 476 U.S. 79, 93 (1986).

As the Third Circuit noted, the Supreme Court of the United States held in Washington v. Davis,

426 U.S. 229 (1976), that intent is a *prima facie* element of any Constitution-based civil rights

claim of discrimination.  Commonwealth of Pa. v. Flaherty, 983 F.2d 1267, 1273 (3d Cir. 1993).

Plaintiff alleges that he was subjected to harsher discipline and discriminated against by

the City of Newark because of his race.  However, Plaintiff offers no evidence of receiving

different treatment than other similarly situated City of Newark police officers.  Moreover, the

facts of this case do not establish that Plaintiff's race or his speech activity was the reason he

received the discipline that he received or the reason why he was ultimately terminated.  Without

a proper comparison to similarly situated non-minority NPD officers, it would be improper to

infer that the mere fact that African American and minority officers were disciplined is evidence

of discrimination.  Plaintiff offers no such comparison.

Nance fails to oppose this argument.  Plaintiff simply summarizes Newark's position in

one sentence: "Defendants' (sic) argue that plaintiff's equal protection claim should fail since

plaintiff has not alleged sufficient facts for a jury to conclude that defendants' (sic) discriminated

against him on account of his race or his speech related activity."  Plaintiff then ignores the issue

completely.

This Court grants the City of Newark's motion for summary judgment on Plaintiff's equal protection claims in Count One of the Complaint because Plaintiff fails to offer evidence of purposeful discrimination.

*Count Two - Freedom of Speech and Freedom of Petition*

As a preliminary matter this Court rejects Plaintiff's claim of a Ninth Amendment violation. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "The Ninth Amendment simply shows the intent of the Constitution's authors that other fundamental personal rights should not be denied such protection or disparaged in any other way simply because they are not specifically listed in the first eight constitutional amendments." Griswold v. Conn., 381 U.S. 479, 492.

Plaintiff fails to identify what additional constitutional rights he claims exist under the Ninth Amendment or how the Defendants violated those rights. Newark's motion pertaining to the Ninth Amendment claims is granted.

Plaintiff also brings a claim under the First Amendment, alleging a retaliation claim against Newark. The First Amendment provides, in relevant part:

> Congress shall make no law. . . abridging the freedom of speech,...or the right of the people...to petition the Government for a redress of grievances.

U.S. Const., amend. I.

A public employee does not forfeit the First Amendment right to speak on matters of public concern by virtue of public employment. Connick v. Myers, 461 U.S. 138, 142 (1983). That right,

however, must be balanced against the interests of the public employer in the effective discharge of its public duties.  In instances where an employer denies that it has fired an employee because of allegedly protected speech, a court will determine whether protected speech is involved because only cases involving protected speech or speech-related activity are permitted to go to the jury.  See San Filippo v. Bongiovanni, 30 F.3d 424, 435 n. 11 (3d Cir. 1994).  This Court must therefore determine whether Plaintiff has alleged that he engaged in protected speech or speech-related activities.  The NPD's stated reason for Plaintiff's termination is violation of various Civil Service Rules and chronic inefficiency or incompetence.

The City of Newark asserts that Plaintiff was not engaged in constitutionally protected speech or speech-related activity.  Although Plaintiff alleges that he was retaliated against and eventually terminated because of his outspoken accusations of racism in the NPD, he has failed to identify any evidence that his termination was a result of this speech.  The Third Circuit has held that "speech pertaining to private grievances not of interest to the public at large is not speech on a matter of public concern."  Bradshaw v. Township of Middletwon, 296 F.Supp.2d 526, 538 (D.N.J. 2003).  Accordingly, to prevail on his claim, Plaintiff must show that he spoke regarding matters of public concern, that he suffered an adverse employment action and that there is a causal link between the two.  See Mount Healthy City Scho. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87 (1977).

Plaintiff fails to address the issue of whether his speech was on a matter of public concern.  Instead, Nance cites to two cases from the Second and Ninth Circuits without providing any indication of how those cases apply here.  In Dobosz v. Walsh, 892 F.2d 1135 (2d Cir. 1989), the plaintiff police officer assisted the FBI in investigating whether a fellow police officer's shooting of a teenager was justified and whether the fellow officer attempted to cover up the circumstances

of the shooting.  The plaintiff testified before a grand jury and then again at the subsequent criminal

trial.  The plaintiff alleged that he was harassed and retaliated against in violation of his First

Amendment rights, including having his car vandalized.  In <u>Dobosz</u>, the protected speech was

testimony in a criminal investigation and subsequent criminal trial.  Here, the allegedly protected

speech all stems from Plaintiff's own personal grievances.  "The general public does not share"

Plaintiff's concern over his superior's or fellow employee's behavior toward him.  <u>Cooper v. Cape</u>

<u>May County Bd. of Soc. Servs.</u>, 175 F.Supp.2d 732, 7432-44 (D.N.J. 2001).

  The speech at issue in <u>Chateaubriand v. Gaspard</u>, 97 F.3d 1218 (9th Cir. 1996) is also

distinguishable from that at issue here.  In <u>Chateaubriand</u>, the plaintiff, a public information officer

for the Washington State Senate Democratic Caucus, repeatedly complained to the Caucus

Democratic Leader, the Chariman and the Staff Director about illegal campaign activities allegedly

being conducted by the Caucus' Legislative Services section Coordinator.  The plaintiff claimed that

his complaints led to his subsequent demotion.  Again, as in <u>Dobosz</u> and unlike here, the allegedly

protected speech was not about a personal grievance or complaint.

  Plaintiff's allegation that he expressed concern over the NPD's treatment of African

American and other minority officers in general does not save his First Amendment claim because

his own employment motivated his comments.  <u>See</u> <u>Kadetsky v. Egg Harbor Township Bd. of Educ.</u>,

164 F.Supp.2d 425, 435 (D.N.J. 2001) (teacher's speech on school policies not of public concern

because teacher "was motivated at all times by concern for his own personal employment").

Furthermore, Plaintiff offers no evidence suggesting that his termination resulted from his speech

other than his own self-serving conspiratorial assertions.

  In addition to his free speech claims, Plaintiff alleges that he was fired and otherwise

retaliated against for filing grievances with government bodies regarding discriminatory treatment of African American and minority police officers by the NPD.  Retaliation for filing non-sham lawsuits, grievances or other petitions with government bodies are analyzed under the First Amendment's Petition Clause.  San Filippo, 30 F.3d at 434-35.  Such petitions need not be on a matter of public concern.  Id. at 441-42.  To receive constitutional protection they need only be non-sham petitions filed within sanctioned channels of redress.  Id.  It appears that Plaintiff sought to redress his grievances in the proper legal channels whether within the NPD's own remedial scheme or in the courts of this State.

Newark suggests that Plaintiff has failed to show a connection between the complaints and lawsuits he filed and his termination.  The Third Circuit has recognized that temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation, see Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) ("[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.").

Newark asserts that Plaintiff's termination was thirty-three months following the filing of his lawsuit, Nance v. Jacobs, *et al.* Docket No. ESX-L-16854-93.  The City of Newark argues that this time lag indicates that no causal connection between the filing of the suit and Plaintiff's termination exists.  Although Plaintiff's termination may have been nearly three years after the filing of the lawsuit, Plaintiff filed numerous administrative complaints and actions other than that lawsuit.  In addition, Plaintiff filed a  second civil suit in March 1996, ESX-L-3062-96, the same year as Plaintiff's termination.  Additionally, Plaintiff spoke out against NPD Police Chief Santiago's appointment during his televised confirmation hearings.  The City of Newark confirmed Santiago on July 2, 1996, only two months before Santiago recommended Plaintiff's termination.

29

It should be noted that adverse employment actions need not rise to the level of termination. Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000). In this case, the adverse employment actions asserted by Plaintiff include termination as well as suspension and unnecessary drug and psychological testing.

Accordingly, Plaintiff cannot sustain his claims based on his First Amendment free speech rights as a matter of law. However, Plaintiff's claim under the Petition Clause of the First Amendment survives Newark's motion for summary judgment.

*Counts Three and Four - Conspiracy*

To sustain a conspiracy claim under Section 1983, Plaintiff must establish that: (1) Defendants have deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Claims of conspiracy brought under Section 1985(3) apply to private conspiracies. Brotherhood of Carpenters v. Scott, 463 U.S. 825, 832 (1983).

To sustain a conspiracy claim under Section 1985, Plaintiff must establish: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiff argues that the individual Defendants were not acting within the scope of their employment because "scope of employment does not include bringing charges against Plaintiff outside of the forty-five day rule...does not include investigating Plaintiff when he makes administrative submissions about another officer's racial conduct," etc. Plaintiff's misunderstands

30

the meaning of "scope of employment" in this context.

In <u>Sunkett v. Misci</u>, 183 F.Supp. 2d 691 (D.N.J. 2002), this Court explained:

> officers of governmental entities cannot conspire with the entity . . . the rationale is simple: An abstract entity can only act through its officers, so that a conspiracy between the officers and the entity is like a dance with one's own shadow. The exception is if the officers are acting "outside the course and scope of their employment," in which case they are no longer representing the employer entity. The same principles suggest that officers acting within the scope of their employment cannot conspire together. If Agent A and Agent B both act together to employ power that they wield only as a result of their service to Principal A, there is, in truth, only one actor, Principal A. Thus, I agree with the sensible rule suggested by my colleague in the Eastern District of Pennsylvania, Judge Troutman, that officers cannot conspire together unless they have the power to carry out the purposes of the conspiracy when acting outside the scope of their employment.

<u>Sunkett</u>, 183 F.Supp.2d at 722.

Bringing charges against Plaintiff and investigating him are clearly actions within the scope of employment for purposes this analysis. The legitimacy of those actions is irrelevant because the individual Newark Defendants would not have the power to carry out those actions but for the powers and responsibilities they have as agents of the NPD.

Plaintiff also attempts to bring a claim under the theory of common law conspiracy by arguing that Defendants intended to violate his legal right to "lawfully and diligently perform his job." This Court is unaware of any statutory or common law basis for this claim and Plaintiff fails to provide one. Rather, Nance recites the law on how a conspiracy may be proven while ignoring the fact that the conspiracy must have an illegal purpose for it to give rise to a cause of action. <u>Melo v. Hafer</u>, 912 F.2d 628 (3d Cir. 1990). Nance cites no statute, case law or other authority.

Accordingly, this Court grants the City of Newark's motion for summary judgment as to

Counts Three and Four of Plaintiff's Complaint.

*Counts Five through Seven - Title VII, NJCEPA and NJLAD claims against City of Newark*

The statute of limitations for claims under the NJCEPA provides that violations of any provisions of the act should be filed within one year.  The statute begins to run on the date of Plaintiff's termination.  Alderiso v. Med. Ctr. of Ocean County, Inc., 167 N.J. 191 (2001).  The NPD terminated Plaintiff in September of 1996.  Plaintiff filed his Complaint on December 18, 1997, two months after the statute of limitations had run.  The City of Newark's motion is granted and Plaintiff's claims pursuant to NJCEPA are dismissed as outside the statute of limitations.

Turning to Plaintiff's retaliation claims against Newark under the NJLAD and Title VII, Plaintiff must establish a *prima facie* case of retaliation.  In order to do so, Plaintiff must show that (1)  he engaged in a protected activity; (2) the City of Newark took an adverse employment action immediately following the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.  See Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).

Newark submits that Plaintiff cannot establish a *prima facie* case for retaliation because he cannot demonstrate that he was engaged in protected activity.  Only speech on matters of public concern constitutes "protected activity."  Bradshaw, 296 F.Supp.2d at 538.  The speech and actions in which Plaintiff engaged were all, at root, personal grievances and not matters of public concern, as already discussed above.  Plaintiff once again fails to address the City of Newark's argument at all in his Opposition Brief.

Accordingly, the City of Newark's motion for summary judgment as to the Plaintiff's retaliation claims under Title VII and the NJLAD are granted.

*Count Eight - Municipal Liability Claim*

Local governments may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Monell v. Dep't. of Soc. Svcs. of the City of New York, 436 U.S. 658, 694 (1978).  To hold the City of Newark liable, Plaintiff must establish that the City violated his constitutional rights as a matter of policy, regulation or decision officially adopted  by Newark or adopted by custom.  Monell, 436 U.S. at 694 (1978).

An official "policy" is established when a decision-maker possessing final authority to establish municipal policy issues an official proclamation, policy or edict.  Pembaur v. City of Cincinnatti, 475 U.S. 469, 480-81 (1986).  By contrast, a "custom" is established when a practice, though not formally approved by an appropriate decision-maker, is "so widespread as to have the force of law."  Brown v. Bd. of County Commissioners, 520 U.S. 397, 404 (1997); see also Monell, 436 U.S. at 690.

Plaintiff can point to no official policy or custom of racial discrimination or retaliation adopted by the City of Newark.  Plaintiff offers no evidence that the actions of any Newark "policy-maker" were motivated by unlawful discrimination or retaliatory animus.  Accordingly, Plaintiff cannot establish municipal liability as a matter of law and the City of Newark is entitled to summary judgment on Count Eight of Plaintiff's Third Amended Verified Complaint.

### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

As discussed previously, Plaintiff's Third Amended Verified Complaint contains Section 1983 claims for violations of Nance's Constitutional rights to due process, equal protection, freedom of speech and freedom to petition under the 5th, 14th, 1st and 9th Amendments as well as a claim of conspiracy to violate Nance's Constitutional rights in violation of Section 1985, and NJLAD and

NJCEPA claims.  Plaintiff's moving brief fails to refer to any of these claims, identify their elements, cite any evidence in the record demonstrating how their elements have been met, or otherwise show that he is entitled to judgment on any of his claims as a matter of law.

Rather, Nance argues that the disciplinary charges which led to his termination were brought once the NPD's internal time limitation should have barred the discipline as out-of-time.  Plaintiff fails to demonstrate how, even assuming his arguments were meritorious, they would entitle him to judgment as a matter of law on any of his claims.

The NPD's General Order 93-2 provides that disciplinary charges must be brought against an officer within 45 days from the date on which the department finds sufficient information to file a complaint against personnel.  Plaintiff argues that by violating the 45-day rule, certain individually-named Defendants, the NPD and the City of Newark violated his constitutional rights.  Although Defendants dispute that the 45-day rule was violated, Plaintiff fails to explain how, even if the Defendants did violate the 45-day rule, such violation would constitute a violation of his constitutional rights.  Plaintiff fails to set forth the legal standards governing his claims, identify the elements of his claims, or explain why, if the facts he alleges are true, he would be entitled to judgment as a matter of law.

In his reply brief, Plaintiff merely reasserts the points made in his opening brief.  In response to the Defendants' contention that Plaintiff is not entitled to judgment as a matter of law on any of the counts of his Third Amended Complaint, Plaintiff baldly states that "Defendant's contention in this regard is without merit.  In plaintiff's (sic) cross motion for summary judgment it has been demonstrated that [Plaintiff] is entitled to summary judgment because the undisputed facts support his motion for summary judgment, and that there are no material facts which would justify a denial of his motion."

The party seeking summary judgment always bears the initial burden of production, i.e., of making a prima facie case that it is entitled to summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Here, Plaintiff fails to make a *prima facie* case addressing the actual Counts of his Third Amended Complaint.  Simple reiteration of his argument is insufficient to establish that there is no question of material fact.  Accordingly, Plaintiff's Cross-Motion for Summary Judgment on all Counts of his Complaint is denied.

## CONCLUSION

For the reasons stated, this Court grants Defendants' motions for summary Judgment as to Counts Three through Eight of Plaintiff's Third Amended Complaint.

Defendants' Motion for summary judgment as to Count One of Plaintiff's Complaint is granted as to all Defendants with the exception of the Plaintiff's due process claim against the City of Newark.

Defendants' Motion for summary judgment as to Count Two of Plaintiff's Complaint is granted as to all Defendants with the exception of the Plaintiff's freedom of petition claim against the City of Newark.

Surviving the motion for summary judgment are Plaintiff's due process claim against the City of Newark in Count One and Plaintiff's freedom of petition claim against the City of Newark in Count Two of Plaintiff's Complaint.

Plaintiff's cross-motion for summary judgment is denied.

An appropriate Order accompanies this Opinion.


　　　　　　　　　　　　　　　S/   Dennis M. Cavanaugh
　　　　　　　　　　　　　　　Hon. Dennis M. Cavanaugh, U.S.D.J.

Date:　　　　June ___11___, 2007
Orig:　　　　Clerk
cc:　　　　　　Counsel of Record
　　　　　　　　The Honorable Mark Falk, U.S.M.J.