## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| DARREN M. NANCE, | : | Civil Action No. 97-6184 |
| Plaintiff, | : | |
| vs. | : | HON. DENNIS M. CAVANAUGH, U.S.D.J. |
| CITY OF NEWARK; NEWARK POLICE DEPARTMENT; JOSEPH J. SANTIAGO; individually and in his official capacity as a City of Newark Police Officer; ROBERT K. RANKIN, JR., individually and in his official capacity as a City of Newark Police Officer; MITCHEL McGUIRE, individually and in his official capacity as a City of Newark Police Officer; JAMES D. O'Connor individually and in his official capacity as a City of Newark Police Officer; WILLIE E. UNDERWOOD, individually and in this official capacity as a City of Newark Police Officer; IRVING B. GULLER, individually and as an agent for the City of Newark Police Dept.; JOSE COLON, individually and in his official capacity as a City of Newark Police Officer; CHADRAKANT PATEL, individually and as an agent for the City of Newark Police Dept.; JAMES E. TUNIS, individually and in his official capacity as a City of Newark Police Officer; ISABELLA CASTELLANOS, individually and in her official capacity as an agent for the City of Newark; VINCENT BONGERMINO, individually and in his official capacity as a City of Newark Police Officer; and JOHN DOES (1-10), | : : : : : : : : : : : : : | **Document Filed Electronically** **PLAINTIFF'S TRIAL BRIEF** |
| Defendants. | : | |

---

On the brief:

Angelo R. Bianchi, Esq.
Law Firm of Angelo R. Bianchi, LLC
80 Orchard Street
Bloomfield, New Jersey 07003
Tel:  973-680-9900
Fax: 973-680-9909

Attorneys for Plaintiff, Darren Nance

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………….…………………………iii

TABLE OF AUTHORITIES……………………………………………………………………..v

NATURE OF ACTION ……………………………………………………….……………1

JURISDICTION……………………………………………………………………..…1

STATEMENT OF FACTS…………………………………………………………….…1

POINT I
CIVIL RIGHTS VIOLATIONS ARE ACTIONABLE UNDER 42 U.S.C. 1983………………14

POINT II
THE CITY OF NEWARK IS LIABLE TO PLAINTIFF FOR THE VIOLATION
OF HIS CIVIL RIGHTS UNDER MONELL AS THERE IS CUSTOM, PRACTICE,
AND POLICY OF FAILING TO EFFECTIVELY TRAIN AND SUPERVISE
POLICE OFFICERS WITHIN THE CITY OF NEWARK POLICE DEPARTMENT…………14

POINT III
THE CITY OF NEWARK IS LIABLE BASED ON CUSTOM OR USAGE…………………..16

POINT IV
THE DISMISSAL BY THE COURT OF THE INDIVIDUAL DEFENDANTSON
THE BASIS OF QUALIFIED IMMUNITY DOES NOT RELIEVE THE CITY OF
NEWARK OF A LIABILITY…………………………………………………………………..17

POINT V
DEFENDANT CITY OF NEWARK VIOLATED PLAINTIFF'S RIGHT TO DUE
PROCESS FILING FALSE CHARGES AGAINST HIM AND CONDUCTING A
SHAM TRIAL…………………………………………………………………………..18

iii

POINT VI
THE USE OF AN OFFICER'S PRIOR DISCIPLINARY PROCEEDINGS TO
MAKE A DETERMINATION AT A TRIAL IS IMPROPER, BECAUSE PAST
RECORDS OF DISCIPLINARY PROCEEDINGS CANNOT BE USED TO
PROVE THE CHARGE FOR WHICH THE OFFICER IS ON TRIAL............................19


POINT VII
PLAINTIFF WAS DEPRIVED OF A FAIR AND IMPARTIAL HEARING AND
OF DUE PROCESS WHEN THE MEMBERS WHO HAD NOT HEARD ALL OF
THE TESTIMONY PARTICIPATED IN ITS DELIBERATION AND DECISION..............20


POINT VIII
THE COURT SHOULD PRECLUDE ALL EVIDENCE RELATING TO
DISCIPLINARY COMPLAINTS AGAINST NANCE, WHICH WERE NEVER
TRIED, AND DISCIPLINARY RECORD AGAINST NANCE FOR WHICH A
DECISION WAS MADE AND THAT DECISION WAS STAYED PENDING
APPEAL............................................................................................................22


POINT IX
THE  CITY OF NEWARK IS LIABLE TO DARREN NANCE UNDER
NEW JERSEY LAW AGAINT DISCRIMINATION......................................................23


POINT X
THE PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES FOR BEING
DISCRIMINATED AGAINST THE NEW JERSEY LAW AGAINST
DISCRIMINATION............................................................................................24


CONCLUSION......................................................................................................24

iv

## TABLE OF AUTHORITES

### Federal Cases

Abramson v. William Paterson College, 260 F. 3d 265, 285 (3d Cir. 2001)........................24

Beck v.  City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996)...............................................16

Breeze v. Fort Bend County, 145 F. 3d 578 (5th Cir. 1998)............................................15

City of Canton v. Harris, 489 U.S. 378 (1989)..........................................................15

City of St. Louis v. Prionik, 485 U.S. 112 (1988)......................................................16

Easista v. Weir, 430 F. 2d 74 (3d Cir. 1965).

Fagan v. The City Vineland, 23 F. 3d 1283 (3rd Cir. 1994)............................................17

Farrell v. Planters Lifesavers Company,  206 F. 3d 271 (3d Cir. 2000)...............................24

Foley v. City of Lowell, 948 F. 2d 10 (1st Cir. 1999)..................................................16

Hopkins v. Andaya, 958 F. 2d 881 (9th Cir. 1992).....................................................17

Keenan v. City of Philadelphia, 93 F. 2d 459, 468-69 (3rd Cir. 1992)................................15

Kelly v. Bishop, 119 A.6 (1922)........................................................................21

Lazer v. City of Los Angeles, 946 F. 2d. 630, 646 (9th Cir. 1991).....................................16

Monell v. Dept. of Soc. Serv. of the City of N.Y., 436 U.S. 658 (1978)........................14, 15

Monroe v. Pape, 365 U.S .167 (1961)..............................................................14, 15

Simons v. City of Philadelphia, 945 F. 2d 1042 (3rd Cir. 1991).......................................17

Spell v. McDaniel, 824 F. 2d 1380, 1387 (4th Cir. 1987)..............................................17

### State Cases

Artstizibal v. City of Atlantic City, 380 N.J. Super. 405 (Law Div. 2005)...........................19

v

Eisberg v. The Mayor & Council of The Borough of Cliffside Park, 92 N.J.L., 321
(Sup.Ct. of N.J. 1919)............................................................................20, 21, 22

Grupp v. Borough of Heightstown, 331 N.J. Super. 398 (Law Div. 2000)...........................19

In the Matter of Raymond Morrison, 216 N.J. Super.430, 143 (1987)..............................19

In the Matter of Sgt. Charles v Wenderwicz, Jr. 195 N.J. Super.126 (App. Div) 1984.............19

Jamison v. Rockaway Township Board of Education, 242 N.J. Super 421
(App. Div. 1990)...........................................................................................23

Johnson v. City of Wildwood, 116 N.J.L. 462 (E&A 1936)...........................................20

Marjarum v. Hamilton Twp Div. of Police, 93 N.J.A.R. 2d (CSW) 143 1992
WL 464240..................................................................................................19

McAlpine v. Garfield Water Commission, 135 N.J.L. 497 (E&A, 1947).............................21

Millburn Township, Essex County v. Civil Service Commission of New Jersey, 125 N.J.L.
521 (Supreme Ct.) 1940...................................................................................19

Long v. Daly, 105 N.J.L. 492..............................................................................21

State v. Butler, 89 N.J. 220 (1992)........................................................................19

The City of Asbury Park v. Department of Civil Service, 17 N.J. 419 (1955).......................21

The Fraternal Order of Police Lodge #1 Camden v. The City of Camden Police Department,
368 N.J.S. Super. 56 (Law. Div. 2003).............................................................21, 22

**Federal Statutes**

28 U.S.C. § 1331............................................................................................1

28 U.S.C. § 1343(3)........................................................................................1

28 U.S.C. § 1343(4)........................................................................................1

28 U.S.C. §1367(a)........................................................................................1

42 U.S.C. § 1983..............................................................................1, 2, 14, 15, 16

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

42 U.S.C. § 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

## **State Statutes**

N.J.S.A 40A:14-147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 18

N.J.S.A. 10:5-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 24

N.J.S.A. 10:5-12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

N.J.S.A. 2A: 15-5.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

## NATURE OF ACTION

This is a civil rights violation.   Acting through its employees, members of the Police Department of the City of Newark in concert violated plaintiff's civil rights by infringing upon his First Amendment free speech right, plaintiff's freedom of petition under the First Amendment of the Constitution and that is set forth in Count Two of the Complaint.  Plaintiff's due process claims against the City of Newark as guaranteed by the Fourteenth Amendment of the Constitution of the United States.  Plaintiff's N.J.L.A.D. claims against the City of Newark.

## JURISDICTION

The jurisdiction of this court is predicated upon 28 U.S.C. 1331, 1343(3), 1343(4), and 1367(a).  Jurisdiction is also predicated upon 42 U.S.C §§1983, 1985, 1986, and 1988, and the 1st, 4th, 5th, 8th, and 14th Amendments to the U.S. Constitution.

## STATEMENT OF FACTS

Plaintiff was appointed to the Newark Police Department on October 16, 1989.  Plaintiff was terminated from the defendant police department on September 3, 1996 after a departmental trial.

Prior to becoming a member of the Newark Police Department, Plaintiff had to submit to a psychological test that was conducted by a Dr. Torres who found he was fit to serve as police officer for the City of Newark.  While at the police academy, plaintiff received a commendation for outstanding performance. During his period of employment, plaintiff filed numerous complaints about illegal, discriminatory, and retaliatory conduct of Newark Police Department Personnel by way of numerous Administrative Submissions, commonly known as "1001s", regarding improper actions taken by superior officers it the department. He also filed numerous complaints dealing with harassment, racial bias, disparate treatment, working conditions, and

1

reprisals taken against him by supervisory personnel, in violation of State and Federal law, including, but not limited to, CEPA, 42 USC 1983, Title VII and LAD.

Additionally, complaints were made to state and federal agencies concerning the discriminatory, racial, and retaliatory actions of the Newark Police Department personnel. Those complaints were lodged with the Department of Personnel, State of New Jersey, the New Jersey Division of Civil Rights, the Essex County Prosecutor's Office, Union Grievance(s), the Department of Law and Public Safety of the State of New Jersey, the United States Attorney's Office for the State of New Jersey, and other agencies and elected officials. Additionally, plaintiff filed two civil rights lawsuits against the City of Newark Police Department, City of Newark, and many supervisory personnel from the Newark Police Department, many of whom were defendants in this case. During the course of his employment, plaintiff received numerous commendations (approximately twenty-one in all) and certificates for outstanding police performance.

In addition to the complaints filed against superiors of the Newark Police Department, plaintiff complained about intentional, improper, and unprofessional conduct toward him and other policemen, and the fact that the defendants conspired by means of mutual understanding, either expressive or implied, among themselves and others for the purpose of denying plaintiff his position as a member of the Newark Police Department. They did this by generating false criminal and administrative charges in retaliation for the complaints lodged by the plaintiff as aforementioned.

Plaintiff had filed a civil suit in State Superior Court alleging civil rights violations of Newark police personnel, many of whom were defendants in this case. The suit was filed in 1993 and docketed ESX-L-16854-93, included defendants Underwood, O'Reilly, Newark Police Department, Newark Police Director Celester, and the City of Newark, in addition to other

2

superior officers of the Newark Police Department. Said suit alleged that the defendants therein conspired amongst themselves to deny plaintiff due process of law "in their efforts to terminate his employment by generating false criminal charges and meritless, retaliatory disciplinary charges against him."

On April 19, 1996, the Deputy Chief Santiago ordered Captain Lucas to assign a brand new member of the office of internal affairs to review plaintiff's records and make recommendations for termination.

Plaintiff's second civil suit, filed in March 1996 and docketed ESX-L-3062-96, included defendants Colon, Guller, O'Reilly, City of Newark, City of Newark Police Department, and other individual superior officers.

When Santiago's confirmation hearings for Director of the Newark Police Department occurred before the Newark City Council, plaintiff spoke out against the appointment at a televised public hearing. Santiago was confirmed after the hearing on July 2, 1996. However, the City Council members felt compelled to write Santiago to advise him that he was to take no retaliatory action against plaintiff.

As can easily be seen from the filing of these two civil suits, many of the defendants listed as defendants by plaintiff in this case were the very same individuals who retaliated against him for lawfully filing the administrative submissions, and submissions to other outside governmental entities wherein plaintiff alleged illegal, discriminatory, and retaliatory conduct of Newark Police Department personnel, as referenced above. Of course, plaintiff submits that these reprisals were in violation of his rights to free speech and petition protected by the state and federal constitutions, as well as, federal and state statutes, as plead in plaintiff's complaint and in violation of both federal and state statutory rights as detailed in plaintiff's Third Amended Verified Complaint.

3

The defendants contended that plaintiff cannot demonstrate that any of these defendants knew at the time of the complaint that their actions violated plaintiff's constitutional rights. The testimony that has been elicited during discovery clearly demonstrates the individual defendants did act in concert to attempt to have plaintiff silenced and removed from the Newark Police Department.

Specifically, the plaintiff's problems with the department ostensibly began in 1990 when he complained about a racist police officer Michael LaPoint. LaPoint was working with plaintiff and they both observed an African-American lying on the street. LaPoint (a white male) stated to plaintiff (an African-American male) that the man was nothing but a "drunken nigger" and also referred to him as a "mental nigger." Plaintiff protested LaPoint's comments and called him a racist. A verbal and eventual physical, altercation occurred between plaintiff and LaPoint. Plaintiff brought the racist comments of the "LaPoint incident" to the attention of many police officers and to the command structure of the police department. An internal affairs investigation occurred, but only the issues about the verbal and physical altercation were investigated, and the racial overtones to the argument were completely overlooked. After this incident, reprisals were taken against plaintiff due to his stance that the police department allowed these comments made by LaPoint to go unchecked. Plaintiff began to be the victim of other officers responding negatively and suspiciously toward him.

The problems for plaintiff continued and his allegations about racism subjected him to outrageous reprisals that were again allowed to occur unchecked. For example, on July 27, 1990, plaintiff found a caricature scribbled on the wall of the locker room located within the East Precinct a drawing that was made in indelible ink. The caricature was of a police officer with a gun drawn toward another police officer with is hands raised and writing which state, "Freeze white-ee, it's Nance." Also, located in the common police bathroom, written in indelible ink,

4

was the inscription "Vote for Nance, Racist of 1990." Plaintiff filed an administrative submission regarding these events that were also literally in the plain view of the command structure of the department, who did nothing to investigate the author(s) of the writings. [Administrative submission dated 8/5/90.]  So too, the internal affairs submissions resulted in not even the slightest investigation.  Plaintiff became a target of the command structure of the department, as further evidenced by plaintiff's expert's report.  In other words, once plaintiff was a target, and once plaintiff filed complaints against many individuals in the command structure, a concerted effort was made to single plaintiff out for unwarranted, retaliatory, and excessive punishment.

The following are some additional instances of retaliatory conduct taken by the named defendants in this matter individually and in concert with one another and permitted to go unchecked by the Newark Police Department supervisors and policymakers.

Instances of retaliatory conduct taken by a named defendant in this matter individually and in concert with one another are too voluminous to set forth herein.  However, same have been provided to the District Court in Plaintiff's Brief in Opposition to Defendant, City of Newark, et al., Motion for Summary Judgment and in the deposition readings listed in plaintiff's Pre-Trial memorandum, which are adopted herein by reference.  They deal with the many false and retaliatory charges that were lodged against the plaintiff as a result of plaintiff speaking out and exercising his right to free speech and to petition.  The following are a few examples of the activities of the agents for the City of Newark Police Department: Chief O'Reilly who used abusive and foul language when dealing with the plaintiff denied Plaintiff a permit to purchase a non-service issued gun.  Plaintiff had to file a suit in the Superior Court, testimony was taken over an extended period of time, and Judge Levy, who heard the testimony, determined that in denying plaintiff the permit to purchase O'Reilly failed to treat him in the same manner as other

5

officers under similar or indeed more serious transgressions and the Court referred to the disparate treatment of the plaintiff by O'Reilly.

Another example dealt with the then Defendant Colon and Tunis, Colon had the plaintiff come to the medical office of the Newark Police Department, to the surgeon's office, for allegedly excessive absenteeism and then had the plaintiff submit to a urine analysis which is contrary to all the rules and regulations of the department.  On November 11, 1994, he sent an Administrative Submission to O'Reilly claiming plaintiff displayed excessive hostility and that is why he ordered the urine analysis.  After the urine analysis' report proved to be negative, two months later on January 26, 1995, Colon wrote another letter concerning the incident to Deputy Chief O'Connor claiming that the plaintiff threaten him with a weapon, which allegation turned out to be completely false and even the Detective Tunis, who was assigned to the surgeon's office, did not support the testimony of Colon.  However, as a result of that report submitted by Colon, two months after he submitted an initial report to O'Reilly, he was ordered to submit to a psychological examination by Dr. Guller.  Plaintiff denied the allegations as set forth in Colon's both 1995 submission to the chief.  He is supported in this position by the two union officers who were present during the alleged incident, as well as Lieutenant Tunis.  However, no charges, criminally or departmentally, were filed against the plaintiff that he threatened Colon. The testimony of these witnesses clearly belies that of Colon and demonstrates that he, Colon, supplied false information in order to further the conspiracy to remove plaintiff from the police force.  Colon also violated the drug-testing policy of the Newark Police Department, which clearly states that prior to a drug test being given only certain superiors can approve of same and only upon a showing of good cause.  Colon was not one of those individuals who had that authority.  Despite the violation of that policy, which O'Reilly was clearly aware of, no action was taken against Colon.

6

Following the normal practice of the Newark Police Department and its superiors, as it dealt with Nance, that persons who violated Nance's rights are not in anywise disciplined, but Nance is disciplined. In this case, ordered to go for a psychological examination on false premises.

Dealing with another policymaker in the department, the Defendant Joseph Santiago, then Deputy Chief in charge of the Internal Affairs Division of the Newark Police Department, who was aware of Nance's administrative complaints and lawsuits, ordered that an investigation be commenced against the plaintiff and ordered plaintiff to attend the Disciplinary Hearing, which sought plaintiff removal from office. Over and above having an investigation commenced and plaintiff ordered to attend the Disciplinary Hearing, Santiago's activities as far as the plaintiff is concerned clearly demonstrate, as a policymaker, he caused violations of plaintiff's constitutional rights.

Some examples of his activities concerning the plaintiff are that when plaintiff complained of Lieutenant Salau regarding racial remarks he made, which complaint was supported by Detective Mustafa, Santiago did not order an investigation of Salau, but orders an investigation of Nance and Mustafa for racist behavior. One month after plaintiff files a civil rights lawsuit against the City of Newark and others, Santiago sends a memo and requests that based upon a thirteen-month-old psychological report, together with the disciplinary record of plaintiff, that an investigation should be conducted recommending charges seeking termination. The request for Santiago to have a hearing, which was in violation of N.J.S.A. 40A:14-147, the 30-Day Rule and the 45-Day Rule, which Santiago was well aware of having had charges against him dismissed for not being brought within 45 days. In reference to the 30-Day Rule, it should be noted that in reference to the charges against plaintiff before the board, the majority of those

7

were stale charges in that when they were for alleged violations that were charged five months to three years before the charges were brought for hearing.

1) CAP # 91-1 - charges were served on January 2, 1991, and the matter was not brought to hearing until May 8, 1991.  2) CAP #92-136 - charges were served on July 19, 1992, and were not brought before trial until July 18, 1995.  3) CAP # 93-196 - charges were lodged on August 28, 1993, and not brought for a hearing until July 18, 1995.  4) CAP # 93-204 - charges were served November 8, 1993, and the matter was not brought for hearing until June 20, 1995.  5) CAP #93-312 - charges were lodged on December 13, 1993, and not brought for a hearing until July 11, 1995.  6) CAP # 94-188 - charges were lodged on July 4, 1994, and were not heard until July 12, 1995.  7) CAP #94-397 - charges were lodged on December 14, 1994, and were not heard until June 20, 1995.  8) CAP #94-409 – complaints were served upon him December 23, 1994, and were not heard until July 11, 1995.  9) CAP #94-457 – charge lodged on January 11, 1995, heard June 20, 1995 (failure to bring doctor's note).   10) CAP # 94-474 – charges lodged on January 11, 1995, and heard on June 21, 1995 (failure to bring doctor's note).   11) CAP #95-65 – (failure to bring doctor's note).  Further the charges lodged against Nance, which resulted in his termination, were based upon a thirteen-month-old psychological report, which had recommended back then that he be terminated. Santiago recommending that Bongermino, a person with one month's experience in the Internal Affairs Division and who was appointed to that position by Santiago, be assigned to conduct the investigation despite his not having previous experience with internal affairs.  Testimony that Santiago had attempted to influence trial boards as to what their findings should be demonstrate a history of Santiago's dislike for Nance, even before plaintiff appeared before the City Council in opposition of Santiago seeking to be made Director of the Newark Police Department.

8

Returning to Chief O'Reilly, another Newark Police Department policymaker, the following are some incidents produced regarding O'Reilly and his animus toward the plaintiff. Plaintiff filed a civil rights suit against O'Reilly and also Administrative Submissions were filed by plaintiff against O'Reilly. Plaintiff's application for a permit to purchase an off-duty gun was denied by O'Reilly, which precipitated an action in the Superior Court of New Jersey in which O'Reilly was a defendant. The Honorable Kenneth S. Levy, J.S.C., filed a written Opinion on January 21, 1998, reversing O'Reilly's denial and setting forth facts that O'Reilly treated Nance in a disparate manner in reference to other police officers. Plaintiff filing administrative complaints and O'Reilly acknowledging knowing that plaintiff's complaints were never investigated. In reference to the disparate treatment, O'Reilly having issued gun permits to people who had been convicted of assault, such as Defendant Santiago to Officer Dileo who plead guilty to a charge of shooting and Lieutenant Rizzitello who threaten two people with a gun while intoxicated. Judge Levy came to the conclusion regarding denying plaintiff a gun permit that O'Reilly failed to treat plaintiff in the same manner as other officers in similar or indeed more serious transgressions and that plaintiff was the victim of disparate treatment by O'Reilly. A very relevant finding in that this is exactly what plaintiff alleged throughout the cause of action in this matter.

Regarding the Disciplinary Tribunal, which recommended termination of the plaintiff, for the sake of brevity plaintiff will outline some of the evidence produced regarding these Defendants.

- Rankin testified that of the three charges against plaintiff, no specifications indicated that same constituted chronic inefficiency and in-competency. Normally someone would not have to defend against a charge without a specification supporting the charge, but Nance did.

9

- Plaintiff was neither inefficient nor incompetent when he worked for Rankin.

- He acknowledged he had agreed regarding disparate treatment between white and black officers.

- He acknowledged the City cannot hold disciplinary charges in abeyance without having a hearing nor can the City file numerous charges so as to control an individual, which was done in this case and his familiarity with the 30-Day Rule and the 45-Day Rule.

- Regarding Defendant McGuire, he testified as to familiarity with the 45-Day Rule, being an instructor at the Police Academy, and that charges had to be filed within that time period or they were not executable.

- He had never seen charges such as those filed against the plaintiff regarding any other officers and he had sat on many trial boards.

- Regarding inefficiency and in-competency, there has to be repeated incidents of official inefficiency and in-competency, and plaintiff's disciplinary record never referred to any charge regarding inefficiency or in-competency.

- He testified that plaintiff's record did not indicate any excess absenteeism or sick time (the alleged reason for being sent to Dr. Colon).

- He never heard of directing someone to conduct an investigation with a view toward termination, and if that occurred it would surprise him.

- In reference to Deputy Michael O'Connor, he acknowledged he was not at both days of the trial.

- Acknowledged that if there were more than one psychological test, it should have been included in Bongermino's report, especially if test indicated plaintiff was fit for duty.

- He had Guller's report not those of Doctors Tabbanor or Torres, who had found the plaintiff fit for duty.

- That of all the charges lodged against the defendant, there were only two good guilty findings that were not pending appeal and that those pending appeal should not have been considered, since there had been no final determination.

- When an officer complains about a superior, such action does not count as disruptiveness and should be investigated.

- Plaintiff's complaints were never investigated.

- He acknowledged that none of the charges against the plaintiff established that plaintiff was incompetent or inefficient. So O'Connor and McGuire agreed the record does not demonstrate in-competency or inefficiency, yet found him guilty clearly amounting to a constitutional violation, deprivation of employment, a property right, which they should have been aware of violated plaintiff's rights.

Regarding Defendant Tunis, an Administrative Submission was filed by plaintiff regarding the urine submission violation that was lodged against Tunis. Also a complaint against Tunis regarding an unjustifiable confiscation of plaintiff's service weapon.   There was no investigation of charges lodged by plaintiff against Tunis, but counter-charges were filed by Tunis against the plaintiff and heard.

Regarding the Corporation Counsel's office of the City of Newark, Defendant Isabella Castellanos was an Assistant Corporation Counsel and she proceeded with stale disciplinary charges against Nance despite the fact of having promulgated a legal memorandum prohibiting charges to be brought under the 45-Day Rule.  It is respectfully submitted that the Corporation Counsel's office, legal representatives of the Newark Police Department, are also people who are policymakers.

11

Several acts committed by Castellanos during the proceedings demonstrate collusion between the Corporation Counsel's office and the Internal Affairs Division. Castellanos contended there were 45 charges that had been lodged against the plaintiff for which he was found guilty. There were only 16 charges of which 14 were pending appeal. She also introduced into evidence convictions of charges that were pending appeal, which should not have been admitted. Castellanos prosecuted the plaintiff in violation of the State statute dealing with the 30 and 45-Day Rules and her memorandum regarding the 45-Day Rule and convinced the Trial Board that matters pending appeal could be taken under consideration by them in arriving at a verdict.

Additionally, after hearing Lieutenant Clark was going to be a witness for the plaintiff, Castellanos called Clark to inquire as to whether he was going to be a witness, when she received an affirmative answer within fifteen minutes Clark was called by his Captain and suspended. This not only demonstrates her improprieties, but also demonstrates that defendants were attempting to retaliate against plaintiff even by denying him access to lawfully subpoenaed witnesses who themselves are then charged, if they dare to testify against the City. Clearly this action can be inferred to the City as far as them having a custom, practice, or their indifference to the rights of the members of the department.

Another example of the improper activities of the Internal Affairs Division, which was well known throughout the department, was that Lieutenant O'Connor contended that plaintiff threatened him and that an Office Smith was present when this occurred. Smith was questioned regarding the incident and reported that he did not hear plaintiff threaten O'Connor. Smith is then charged with departmental offenses as a message to other officers that support plaintiff would not be tolerated. If you supported plaintiff, you would be retaliated against.

12

Regarding Sergeant Bongermino, the following is merely an outline of some of the evidence produced concerning him. He was appointed to internal affairs by Santiago and a month later he was assigned specifically to investigate plaintiff with a view toward termination. He was advised just to review Guller's report, which he acknowledged was Greek to him, and plaintiff's personnel history. He further acknowledged that if a matter is stayed pending appeal, it is not a final determination. He acknowledged that none of the records contained in plaintiff's file referred to plaintiff being incompetent or inefficient.

He did not look for or sift through any other psychological or psychiatric testing of the plaintiff and he recommended termination because that is what Santiago wanted. Without his recommendation, the Board could not be convened to conduct the hearing, which Santiago wanted. He has never been instructed other than the Nance's matter to conduct an investigation with the expected result of termination. That Nance's record revealed the only two charges that were filed against him that were final.

Dealing with Sergeant Underwood from the Internal Affairs Division against whom Nance submitted Administrative Submissions, which were ignored by the administration, and as a result of filing Administrative Submission Underwood filed charges against Nance for which he was tried and convicted. One of the charges being Nance having the temerity to file an Administrative Submission against Underwood. Another Underwood incident dealt with suspects Michael Brown and Clarence Wheeler who were arrested by Nance and Detective Diaz. After the arrest, they were contacted by Underwood, summoned to internal affairs to make statements against the plaintiff relating to their arrest. Underwood took those statements and subsequently both Defendants Brown and Wheeler, gave statements to an attorney exonerating plaintiff and stating Underwood made them sign statements that were altered and told them if they filed a complaint against plaintiff, he would withdraw his complaint against them.

13

Underwood also told Wheeler he does not like Nance, it's a personal thing, he's going to get Nance, have him busted down to walking a beat with rats on Miller Street. More importantly, plaintiff's then attorney wrote to Police Detective Celester about this situation and requested that the matter be reviewed and the director refused in writing not to do anything further demonstrating inaction of the Newark Police Department's number one policymaker.

The incidents referred above were merely some of the improper activities taken against Nance by policymakers and other superior officers. These activities clearly demonstrate that Nance was deprived of his constitutional rights and such deprivation was done pursuant to government custom, policy, and regulation and was also the result of failing to train its officers or supervise its officers against violating constitutional rights of other members of the police department.

## POINT I

### CIVIL RIGHTS VIOLATIONS ARE ACTIONABLE
### UNDER 42 U.S.C. 1983.

42 U.S.C., Section 1983, Protects Citizens from misconduct of government officials and violations of their civil rights. Monroe v. Pape, 365 U.S. 167 (1961); Monell v. Department of Human Services, 436 U.S. 658 (1978). There are various legal theories upon which governmental entities and their officials can be sued as will be discussed throughout this brief.

## POINT II

### THE CITY OF NEWARK IS LIABLE TO PLAINTIFF
### FOR THE VIOLATION OF HIS CIVIL RIGHTS UNDER
### MONELL AS THERE IS CUSTOM, PRACTICE, AND POLICY
### OF FAILING TO EFFECTIVELY TRAIN AND SUPERVISE
### POLICE OFFICERS WITHIN THE CITY OF NEWARK
### POLICE DEPARTMENT.

The defendant is liable to Nance for deprivation of his civil rights as a result of a municipal custom, practice, and/or policy that demonstrated a "deliberate indifference" to the

14

constitutionally guaranteed rights of individuals with whom the City of Newark Police Officers come in contact with.  Monell v. Department of Human Services, 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989); and Monroe v. Pape, 364 U.S. 167 (1961).

The Monell court held that municipal defendants in a 42 U.S.C. §1983 action may be liable if plaintiff can show a custom, practice, and/or policy that permanently caused the constitutional injury to the plaintiff.  In Canton, supra. the United States Supreme Court held that some areas in the operation of a police department are so common and so dangerous with respect to potential constitutional violations that a mere failure to adequately train police officers in these areas can result in a finding of "deliberate indifference" and thus municipal liability for the violation of plaintiff's civil rights.  This liability can be attributed against a municipality for the acts of its employees, not only for the actual policy, but also for its omissions.  These cases typically take the form of failure to train and supervise.  Plaintiff has alleged such claims and the inadequacy and failure to train or supervise its employees can amount to a deliberate indifference.  Failure to train and/or acquiescence in a pattern of constitutional violations such as those lodged by Nance are enough to support such liability against the municipal defendant. Canton, supra. at 388-397.  When the policymakers in a police force, in this case Director Santiago and Chief O'Reilly demonstrate "deliberate indifference" to constitutional rights by failing to instill adequate training and/or supervision and such "deliberate indifference" proximately causes injury to a plaintiff, the municipality is liable.  See Keenan v. City of Philadelphia, 93 F. 2d 459, 468-69 (3d Cir. 1992); and Breeze v. Fort Bend County, 145 F. 3d 578 (5th Cir. 1998).

Holding that the personal acts of a policymaker can be sufficient to impose liability on the government entity.  The jury may infer municipal liability from a custom or practice of a constitutional action at a lower level of a municipal agency, in this case the City of Newark

15

Police Department. Beck v. City of Philadelphia, 89 F. 3d 966 (3d Cir. 1996). Moreover, the Courts have held the mere absence of an effective discipline system or failure to discipline the offending officers, in particular for their violations, may be enough to prove liability through a custom, practice, and/or informal policy. Beck, supra. at 966, see Foley v. City of Lowell, 948 F. 2d 10 (1st Cir. 1999), Lazer v. City of Los Angeles, 946 F. 2d. 630, 646 (9th Cir. 1991). So too, municipal liability under 42 U.S.C. §1983 can attach for any single unconstitutional act of its employees when the employee has policymaking authority in a specific area involved. City of St. Louis v. Prionik, 485 U.S. 112 (1988).

In the matter before this Court, the City of Newark Police Officers received inadequate training with regard to the following areas, which lead to constitutional violations complaint by plaintiff: abuse of process, deprivation of freedom of speech, deprivation of right to petition, and lack of due process in the City of Newark's Tribunal Hearing Agency. These are by nature fraught with the danger of civil rights violations. By not instilling or training an officer to a supervisory program stressing the importance of un-retaliatory action by a superior officer against non-ranking officers and by sustaining an ineffective Internal Affairs Division, Santiago, O'Reilly and the Corporation Counsel of the City of Newark have acquiesced to constitutional violations among Newark Police Officers. For these reasons, the City of Newark is liable to plaintiff for deprivation in violation of his civil rights.

### POINT III
### THE CITY OF NEWARK IS LIABLE BASED
### *ON CUSTOM OR USAGE.*

Liability based on custom or usage whether there is a finding that either by actual or constructive knowledge by the governing body or policymaker with responsibility for the oversight and supervision that the practices have become customary among its employees. In

this particular case, the custom and practice of when a complaint by a non-ranking officer is made against the superior officer, the custom or practice is the superior officer files charges against the non-ranking officer and the charges against the non-ranking officer come to trial and nothing is done in reference to the non-ranking officer's complaint against the supervisor. Hence, unlike a policy case which comes from the top down, a fervent decision of a policymaker, a custom develops from the bottom up. Thus, the liability of a municipality from the customary constitutional violation derives not from its creational custom, but from its tolerance or acquiesces. Spell v. McDaniel, 824 F. 2d 1380, 1387 (4th Cir. 1987).

**POINT IV**

**THE DISMISSAL BY THE COURT OF THE INDIVIDUAL
DEFENDANTS ON THE BASIS OF QUALIFIED IMMUNITY
DOES NOT RELIEVE THE CITY OF NEWARK OF A LIABILITY.**

It is very important to note that officers may be exonerated due to qualified immunity and yet the City is still liable for the improper training or improper procedure, even if the police officer is let off. Permitting police officers to continue in their capacity who are badly trained and instructed and who create a constitutional injury is a problem for the City. Hopkins v. Andaya, 958 F. 2d 881 (9th Cir. 1992). The police officers' history of retaliatory action against other police officers can bear on whether they were appropriately trained. Fagan v. The City Vineland, 23 F. 3d 1283 (3rd Cir. 1994).

A finding of municipal liability does not depend on the liability of any police officer who deprives another of their constitutional rights because the police officer was following a city policy, practice, or custom that reflected a deliberate indifference to the constitutional right of a citizen. Then the City is liable as their actions are adjudged differently. Simons v. City of Philadelphia, 945 F. 2d 1042 (3rd Cir. 1991).

## POINT V

## DEFENDANT CITY OF NEWARK VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS FILING FALSE CHARGES AGAINST HIM AND CONDUCTING A SHAM TRIAL.

The plaintiff was deprived of due process for numerous reasons. The first being that the failure of the defendant to comply with disciplinary process requirements of N.J.S.A. 40A:14-147. In addition to the Newark Police Department's General Order 93-2, which deals with disciplinary proceedings, N.J.S.A. 40A:14-147 and General Order 93-2 set forth the time when the 45-Day begins, namely from the date in which the department finds sufficient information to file a complaint against the personnel and the time when a hearing must be held, the 30-Day Rule. The 45-Day Rule was incorporated in a memorandum by Assistant Corporation Counsel Isabel Castellanos given to Chief O'Reilly who then disseminated it amongst command.

On or about March 14, 1995, Irving B. Guller, a psychologist who was hired by the City of Newark, rendered a psychological opinion concerning the plaintiff to defend the police department and recommended that the department severed plaintiff's employment due to, in his professional opinion, the plaintiff was unfit for duty. At that time, the department had sufficient information to file a complaint against the defendant. It was not until May 12, 1996, that plaintiff received notification of disciplinary charges sought his removal from his position as a Newark Police Officer. Prior to the commencement of the taking of testimony on August 23, 1996, counsel for Nance moved to dismiss the complaint for failure to comply with the provisions of the statute and general order. N.J.S.A. 40A:14-147 and General Order 92-3 provide in these applicable parts that "A complaint charging a violation of the internal laws and regulations established for the conduct of law enforcement unit show be filed no later than 45 days after the date in which the person filing the complaint obtains sufficient information to file the matter upon which the complaint is based." These rules further provide "A designated

18

hearing thereon…shall be not less than 10 days nor more than 30 days from the date of service of the complaint" and if not the complaint shall be dismissed. <u>Marjarum v. Hamilton Twp Div. of Police</u>, 93 <u>N.J.A.R.</u> 2d (CSW) 143 1992 WL 464240. The rule further provides "A failure to comply with said provision as to the service of the complaint and the time within which the complaint is to be filed <u>shall</u> require a dismissal of the complaint." Pursuant to this statute an administrative charge against a police officer must be filed 45 days after the date on which the department obtains "sufficient information to file a complaint." <u>Grupp v. Borough of Heightstown</u>, 331 N.J. Super. 398 (Law Div. 2000). The courts have held that the statute is ambiguous and clear in is face and consistent when you apply it as written. <u>State v. Butler</u>, 89 N.J. 220 (1992); <u>Artstizibal v. City of Atlantic City</u>, 380 N.J. Super. 405 (Law Div. 2005).

This is clear that the City of Newark was required to dismiss the complaint as requested by counsel for Nance at the Disciplinary Trial, since the 45-Day Rule was violated. Plaintiff was denied of his constitutional right to due process. Additionally a trial should not have been commenced because it violated the 30-Day Rule.

### POINT VI

**THE USE OF AN OFFICER'S PRIOR DISCIPLINARY
PROCEEDINGS TO MAKE A DETERMINATION AT A TRIAL
IS IMPROPER, BECAUSE PAST RECORDS OF DISCIPLINARY
PROCEEDINGS CANNOT BE USED TO PROVE THE CHARGE
FOR WHICH THE OFFICER IS ON TRIAL.**

It is clear that evidence of one's prior disciplinary record is neither relevant nor admissible as tending to prove the guilt of the charge in the case that is being tried. <u>Millburn Township, Essex County v. Civil Service Commission of New Jersey</u>, 125 N.J.L. 521 (Supreme Ct.) 1940; <u>In the Matter of Sgt. Charles v Wenderwicz, Jr.</u> 195 N.J. Super.126 (App. Div) 1984. <u>In the Matter of Raymond Morrison</u>, 216 N.J. Super.430, 143 (1987) the court held that such evidence of prior charges would only be admissible following conviction and considered only for

the purpose of the penalty to be imposed.  In the within matter, this error was compounded by the fact that all but two of the prior charges were pending appeal, as such, no final determination as to the merits had been affirmed.  Notwithstanding the foregoing, the Board improperly considered the charges.   It is settled that when a conviction is on appeal, the use of that conviction cannot be used at another proceeding since there has not been a finality to the conviction.

To add further injury, the trial board was permitted to hear testimony concerning charges that were lodged against Nance, which had not been adjudicated, but rather were awaiting trial. In short, the trial board considered as substantive evidence of plaintiff's guilt prior charges on appeal and complaints not yet scheduled for trial.  In essence, the defendant bootstrapped these charges, assumed the plaintiff was guilty of these offenses since he was charged with them.  It then used these open charges and unproven charges as a basis to find him chronically inefficient. The action of the City of Newark through its representative clearly violated Nance's right to a fair and impartial hearing by the use of this inadmissible evidence as referenced above.

**POINT VII**

**PLAINTIFF WAS DEPRIVED OF A FAIR AND IMPARTIAL HEARING AND OF DUE PROCESS WHEN THE MEMBERS WHO HAD NOT HEARD ALL OF THE TESTIMONY PARTICIPATED IN ITS DELIBERATION AND DECISION.**

Newark Police Department General Order 93-2 dealing with disciplinary process provides that the Trial Board should consist of "a three member panel" who "shall hear major offenses."

A fair trial is a legal trial, one conducted according to the rules of common law except in so far as it has been changed by statute and one where the accused's legal rights are safeguarded and respected. Johnson v. City of Wildwood, 116 N.J.L. 462 (E&A 1936); Eisberg v. The Mayor

20

& Council of The Borough of Cliffside Park, 92 N.J.L. 321 (Sup. Ct. of N.J. 1919), and Kelly v. Bishop, 119 A.6 (1922). In the within matter, plaintiff was dismissed from the police force following a trial wherein the hearing began in the presence of three members of the board. After two witnesses had testified, a fourth member was substituted on the board for one of the original three. This new member was allowed to sit as one of the three judges, participated in the deliberations and voted to terminate the plaintiff without having heard the evidence of the first two fact witnesses.

It is axiomatic in this State that plaintiff has a right to a fair and impartial trial. In Eisberg v. The Mayor & Council of The Borough of Cliffside Park, 92 N.J.L. 321 (Sup.Ct. of N.J. 1919), the court held "the rule is fundamental that a person who has not heard the testimony in a given case occupies no legal status as arbiter or judge to adjudicate upon the cause." Plaintiff's trial board hearing violated the basic precepts of the holding set forth in Eisberg. The principle as set forth therein is further in accord with the court's holding in McAlpine v. Garfield Water Commission, 135 N.J.L. 497 (E&A, 1947), which dealt with the termination of an employee. In that case, five commission members sat as hearing officers. The matter was heard on several dates. On two of the dates, one of the commission members did not appear but the hearing continued to proceed. The party who did not attend that meeting did however participate in the deliberation of the commission, which voted to terminate the plaintiff's employment. The Court of Errors and Appeals determined that the action taken by the commission deprived the plaintiff of a fair and impartial trial, which could only be assured when the members participating in the deliberation and the decision had an equal opportunity to hear and evaluate all of the evidence presented at the hearing. The court set aside the employee's dismissal. See also Kelly v. Bishop and Long v. Daly, 105 N.J.L. 492. The position was further upheld in The City of Asbury Park v. Department of Civil Service, 17 N.J. 419 (1955), and is further enunciated in The Fraternal

21

Order of Police Lodge #1 Camden v. The City of Camden Police Department, 368 N.J.S. Super. 56 (Law. Div. 2003). In relying on Eisberg, The Fraternal Order of Police Lodge #1 Camden, the Court affirmed the proposition that the rule is fundamental that a person who has not heard the testimony in a given case occupies no legal status as arbiter or judge to adjudicate upon the case.

As a result of the foregoing, it is clear that at plaintiff's hearing, one of the hearing officers who made the determination as to guilt or innocence and the recommendation as to punishment did not sit for the entire proceeding, but only sat on the second of two days. He did not hear the two primary fact witnesses. This procedure clearly resulted in an unfair and improper hearing. Plaintiff was deprived of his Constitutional right to a fair and impartial trial. Based on the foregoing, plaintiff is entitled to summary judgment against the defendants.

## POINT VIII

**THE COURT SHOULD PRECLUDE ALL EVIDENCE RELATING TO DISCIPLINARY COMPLAINTS AGAINST NANCE, WHICH WERE NEVER TRIED, AND DISCIPLINARY RECORD AGAINST NANCE FOR WHICH A DECISION WAS MADE AND THAT DECISION WAS STAYED PENDING APPEAL.**

Defense intends to introduce evidence of the plaintiff's disciplinary record purportedly to address their argument that plaintiff was incompetent and inefficient and the decision of the trial board was proper. This matter since all but two of the disciplinary proceedings were sustained and not pending appeal, it would be improper to introduce the testimony that is mentioned above of charges that were sustained against him, but in truth were pending appeal and it would further be egregious to permit into evidence testimony of charges that were lodged against plaintiff and for which there had never been a determination, especially since the majority of those charges were lodged against him after he was charged with being inefficient and incompetent, which is the subject matter of this particular proceeding.

22

Regarding Federal Rule 403, it is submitted that the Court should not allow under that rule the admission of the disciplinary record of the plaintiff, which were never tried because of the danger of prejudice, confusion of issue, or misleading the jury.

## POINT IX

### THE CITY OF NEWARK IS LIABLE TO DARREN NANCE UNDER NEW JERSEY LAW AGAINST DISCRIMINATION

The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., in part states: "it shall be unlawful employment practice for any person to take a reprisal against any person because he or she has opposed any practice or act forbidden under this act or because he or she has filed a complaint, testified, or assisted in any proceedings under this act." N.J.S.A. 10:5-12(d). To prove a claims under this act plaintiff must establish certain elements: 1) plaintiff engaged in a protected activity; 2) the employer knew that plaintiff had engaged in a protected activity; 3) plaintiff was thereafter subjected to an adverse employment decision by the employer; and 4) there was a causal link between the plaintiff engaging in a protected activity and the adverse action. Jamison v. Rockaway Township Board of Education, 242 N.J. Super 421 (App. Div. 1990).

In reference to the criteria set forth above, Nance engaged in a protected activity, namely freedom of speech, to wit speaking out on matters of public concern for which this Court in its Opinion of 5/19/2006 determined that "This court has determined that Plaintiff engaged in protected activities" Court's Opinion May 19, 2008, page 14. The second prong of the test certainly has been met because the employer knew that plaintiff had engaged in protected activity.

The third prong has been met because plaintiff was terminated after he spoke on these matters and, hence, that constitutes an adverse employment decision by the employer. The Court

23

in <u>Abramson v. William Paterson College</u>, 260 F. 3d 265, 285 (3d Cir. 2001) reasons that termination was sufficient to fulfill the adverse employment element. Going to the fourth element, the Third Circuit has noted that the relevant case law has focused on two factors in finding the causal link for a retaliation claim; timing and ongoing antagonism.  <u>Abramson v. William Paterson College</u>, supra.; <u>Farrell v. Planters Lifesavers Company</u>, 206 F. 3d 271 (3d Cir. 2000).  As the Court held in its May 19, 2008, Opinion, a court found that plaintiff set forth sufficient evidence showing possible antagonism before he was terminated.  Therefore, plaintiff has met all the necessary elements to prove its case against the City of Newark for violating the New Jersey Law Against Discrimination.

<b><u>POINT X</u></b>

<b>THE PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES<br>FOR BEING DISCRIMINATED AGAISNT THE NEW JERSEY<br>LAW AGAINST DISCRIMINATION.</b>

Punitive damages are available against the City of Newark under New Jersey Law Against Discrimination when defendant acted intentionally and/or with callous disregard for plaintiff's rights, as well as intentional violation of Federal law <u>N.J.S.A.</u> 10:5-1 et seq. and Punitive Damage Act <u>N.J.S.A.</u> 2A: 15-5.9 et seq.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, plaintiff has proven a case against the City of Newark, and requests that the requests made herein by plaintiff be granted.

Respectfully submitted,

<b>Law Offices of Angelo R. Bianchi, LLC</b><br>Attorneys for Plaintiff, Darren Nance

S:/ <u>ANGELO R. BIANCHI</u><br>ANGELO R. BIANCHI, ESQ.

Dated: June 1, 2010

24