NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DARREN M. NANCE,                           :
                                           :
            Plaintiff,                     :
                  v.                       :
                                           :
CITY OF NEWARK, NEWARK POLICE :
DEPARTMENT, JOSEPH J. SANTIAGO, :
THOMAS  C.  O'REILLY,  ROBERT  K. :
RANKIN,  JR.,  MITCHELL  McQUIRE, :
MICHAEL O'CONNOR, JAMES DAVID :
O"CONNOR, WILLIE E. UNDERWOOD, :
DR. IRVING B. GULLER, JOSE COLON, :
DR. CHADRAKANT PATEL, JAMES E. :
TUNIS,  ISABELLA  CASTELLANOS,  :
VINCENT BONGERMINO,              :
                                           :
            Defendants.                    :
                                           :

**Hon. Dennis M. Cavanaugh**

# OPINION

Civil Action No. 97-cv-6184 (DMC)

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions *in limine* by Defendant City of Newark ("Newark"). This case concerns Plaintiff Darren M. Nance's ("Plaintiff") claims that Newark and its employees violated the New Jersey Law Against Discrimination ("NJLAD") and the First and Fourteenth Amendments of the United States Constitution. A trial is scheduled to begin on June 9, 2010.

## I. BACKGROUND

Newark employed Plaintiff, an African American male, as a police officer from October 16, 1989, until September 3, 1996, at which time Plaintiff's employment was terminated. During the period of his employment, numerous disciplinary proceedings were brought against Plaintiff, some

of which resulted in Plaintiff's temporary suspension from duty.  Plaintiff alleges that the suspensions, disciplinary actions and termination from the NPD were in retaliation for Plaintiff's persistent complaints to his superiors regarding disparate treatment and "double standards" afforded minority police officers.

In December of 1993, Plaintiff filed a discrimination lawsuit against Newark, the NPD and several of his superiors in the New Jersey Superior Court, Essex County, alleging that Defendants conspired to deny Plaintiff due process of law in their efforts to terminate his employment by generating false criminal charges and meritless disciplinary actions.  Plaintiff alleges his suit precipitated further retaliatory conduct such as forcing him to submit to drug screening and psychological testing.  Plaintiff asserts that Defendants conspired to render a negative psychological report in order to silence him, and used the report as a pretext to terminate Plaintiff's employment with the Newark Police Department ("NPD").

Defendants respond that the disciplinary actions against Plaintiff and his ultimate termination occurred because of his repeated violations of the NPD's rules and regulations as well as his failure to conduct himself in a manner required of a NPD officer.

On December 18, 1997, Plaintiff filed his initial Complaint in this matter against the City of Newark, NPD, several named individuals employed by the City of Newark and the NPD, Dr. Irving B. Guller and Dr. Chadrakant Patel.  In his Third Amended Complaint, Plaintiff alleged eight counts of violations of the United States Constitution, the New Jersey Law Against Discrimination and the New Jersey Conscientious Employee Protection Act ("NJCEPA").

At the conclusion of discovery, the Plaintiff and all Defendants moved for summary judgment.  On June 11, 2007, Defendants' summary judgment motions were granted in part and

denied in part, and Plaintiff's motion was denied. This Court subsequently reconsidered, in part, portions of its summary judgment Opinion. In so doing, Plaintiff's First and Fourteenth Amendment claims against Newark were reinstated, in addition to his NJLAD claim. See Doc. 120, at 9-10. The sole remaining Defendant is the City of Newark.

The four questions that remain for trial are: (i) whether Newark, through its employees, violated Plaintiff's First Amendment right to free speech; (ii) whether Newark, through its employees, violated Plaintiff's First Amendment right to petition the government for redress of grievances; (iii) whether Newark, through its employees, violated Plaintiff's Fourteenth Amendment right to due process; (iv) whether Newark, through its employees, discriminated against Plaintiff in violation of the NJLAD. Plaintiff's constitutional claims (i - iii) are brought pursuant to 42 U.S.C. § 1983 and Monell v. Dept. of Soc. Serv. of the City of N.Y., 436 U.S. 658 (1978).

## II. DISCUSSION

Newark has filed four motions *in limine*: **(A)** to dismiss Plaintiff's claims for punitive damages or, in the alternative, to bifurcate such claims, **(B)** to preclude Plaintiff from making any reference and/or offering any testimony or evidence at the time of trial of alleged violations of his constitutional rights and/or that he has asserted such claims, **(C)** to preclude Plaintiff from offering any testimony from Councilman Ronald Rice, Jr. and from making any reference and/or offering any testimony or evidence regarding the Newark Police Department Racial Disciplinary Disparity Investigation, and **(D)** to preclude the report and testimony of Plaintiff's expert, Dr. Paul McCauley, as inadmissible net opinion.

As the Court writes for the parties, it presumes familiarity with the factual and procedural

history of this case.  The Court references only the facts and law necessary to its consideration of the motions addressed herein.

      **A.**    **Newark's Motion to Dismiss Plaintiff's Claims for Punitive Damages or, in the Alternative, to Bifurcate the Punitive Damages Portion of Trial**

Newark moves to dismiss Plaintiff's claims for punitive damages or, in the alternative, to bifurcate such claims from the liability/compensatory damages stage of trial.  The Court agrees that bifurcation is appropriate.

Pursuant to the NJLAD, "[t]o be awarded punitive damages . . . [a plaintiff] must establish that (1) upper-management actively participated in, or was willfully indifferent to, discrimination against him, and (2) the offending conduct was 'intentional, malicious, and evil-minded.'"  Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 124 (3d Cir. 1999) (internal citations omitted).  Punitive damages against employers are to be awarded when the wrongdoer's conduct is especially egregious, and "only in the event of actual participation by upper management or willful indifference." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 624-25, 626 A.2d 445 (1993).[1]

First, Newark asserts that punitive damages must be denied as a matter of law, as this Court previously determined that Plaintiff did not provide evidence that there was in place a "policy or

---

[1] Newark argues that as a matter of law punitive damages against a municipality are inappropriate, and Plaintiff does not appear to dispute the argument.  Other Courts in this District have arrived at this conclusion.  See Klemash v. Monroe Twp., 2010 U.S. Dist. LEXIS 9382, at *33 (D.N.J. February 4, 2010), MT Holly Citizens in Action, Inc v. Twp. of Mt. Holly, 2009 U.S. Dist. LEXIS 100032 (D.N.J. Oct. 23, 2009) ("It is well-established that municipalities, and more broadly, state and local governments entities, are immune from punitive damages under § 1983.") (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) and Doe v. County of Centre, PA, 242 F.3d 437, 455 (3d Cir. 2001).   Accordingly, the Court will only discuss punitive damages as they pertain to Plaintiff's NJLAD claim.

custom of racial discrimination or retaliation adopted by the City of Newark . . . [or that] the actions of any Newark 'policy-makers' were motivated by unlawful discrimination or retaliatory animus." The Court, however, reconsidered its summary judgment motion and reinstated Plaintiff's NJLAD and Constitutional claims against Newark.  Accordingly, the Court cannot determine, as a matter of law, that punitive damages are inappropriate here.

Second, as neither party disputes, bifurcation of the punitive damages stage of trial is appropriate here.

Newark's motion to dismiss Plaintiff's claim for punitive damages is **denied** as to Plaintiff's NJLAD claims, and its motion to bifurcate such claims is **granted**.

**B.      Newark's Motion to Preclude Plaintiff from Making Any Reference and/or Offering Any Testimony or Evidence at the Time of Trial of Alleged Violations of His Constitutional Rights and/or That He Has Asserted Such Claims**

Newark next argues that Plaintiff should be precluded from offering any testimony or evidence relating to alleged violations of his Constitutional rights.  Newark relies on this Court's June 1, 2007 Opinion, wherein such claims were dismissed.

As noted above, however, this Court partially reconsidered its Opinion, reinstating several of Plaintiff's Constitutional claims.  Indeed, Defendant appears to acknowledge this in its Trial Brief. See Doc. No. 186, at 31-32 ("[T]he only claims still extant in this matter are First and Fourteenth Amendment claims and a LAD claim[.]"); see also page 3, supra.  Accordingly, although Plaintiff's First and Fourteenth Amendment claims against the individual Defendants were dismissed, these Constitutional claims remain as to the City of Newark.

Newark's motion to preclude Plaintiff from making any reference and/or offering any

testimony or evidence at the time of trial of alleged violations of his constitutional rights and/or that

he has asserted such claims is **denied**.

> **C.      Newark's Motion to Preclude Plaintiff from Offering Any Testimony from Councilman Ronald Rice, Jr. and from Making Any Reference and/or Offering Any Testimony or Evidence Regarding the Newark Police Department Racial Disciplinary Disparity Investigation**

Newark moves to preclude Plaintiff from introducing the testimony of Councilman Ronald

Rice, Jr., the Chairman of the Ad Hoc Council Committee on Alleged Disparate Disciplinary Actions

of the Newark Police Department ("the Committee").  Plaintiff contends that Councilman Rice will

testify, in part, as to the Committee's investigation regarding the operation of the police department

during the period in question.  Plaintiff also asserts that Councilman Rice has knowledge of the

Internal Affairs Department of the City of Newark, police disciplinary procedures, and a new system

being put in place to prevent biases that may have existed in the past.  Newark argues that

Councilman Rice's testimony should be excluded.  This Court agrees.[2]

First, the Court finds  that Councilman Rice lacks personal knowledge of the facts relevant

here, as he was elected to the City Council in 2006—nearly a decade after Plaintiff's Complaint was

filed in this action.  (The Court also notes that Councilman Rice has not been proffered as an expert

witness, and thus is limited to providing lay testimony on matters of which he has personal

knowledge).  Councilman Rice was not a member of the Committee during the time of the alleged

conduct.

To the extent that Councilman Rice does have potentially relevant testimony to offer, it

---

[2] Newark asserts that the testimony is irrelevant as Plaintiff's constitutional claims have been dismissed.  With this point, the Court disagrees for the reasons stated above.  See Section II.B, supra.

would most likely constitute hearsay; for example, he would not be permitted to testify to statements made to the Committee covering the relevant time period.  Plaintiff provides no argument to the contrary.  Thus, Councilman Rice's testimony with respect to past practices is inadmissible testimony.

Any evidence as to **current** police department policies would—as an initial matter—be of only minimal relevance.  On this basis alone this Court finds it unlikely that any of such testimony would have relevance outweighing its prejudicial effect.

More importantly, however, even if relevant, most of this testimony would constitute subsequent remedial measures taken by the police department (or the City of Newark) and would likely be inadmissible under Fed. R. Evid. 407.  See Specht v. Jensen, 863 F.2d. 700, 701 (10th Cir. 1998) (excluding, under Rule 407, a statement of remedial steps to be taken in an illegal search suit brought pursuant to 42 U.S.C. § 1983); Maddox v. Los Angeles, 792 F.2d 1408, 1417 (9th Cir. 1986) (excluding evidence of a police department investigation as a subsequent remedial measure in a civil rights suit brought pursuant to 42 U.S.C. § 1983); Gilanian v. City of Boston, 431 F. Supp. 2d 172, 177 (D. Mass. 2006);  McLaughlin v. Diamond State Port Corp., 2004 U.S. Dist. LEXIS 26351, at *11 (D. Del. Dec. 30, 2004) ("Just as subsequent remedial measures are generally inadmissible under Fed.R.Evid. 407, a defendant's attempt to reverse allegedly discriminatory practices should also be inadmissible. It would be perverse indeed if attempts to reverse discrimination could be used to condemn a defendant. Such use of evidence would only serve to discourage reform, and the court will not permit it.").

Newark's motion to preclude Plaintiff from offering testimony from Councilman Ronald Rice, Jr. and from making reference and/or offering testimony or evidence regarding the Newark

Police Department Racial Disciplinary Disparity Investigation is **granted**.

**D.    Newark's Motion to Preclude the Report and Testimony of Plaintiff's Expert, Dr. Paul McCauley**

Newark asserts that Plaintiff should be precluded from offering expert testimony from Dr. McCauley as such testimony constitutes impermissible "net opinion." That is, Newark asserts that his opinion consists of bare conclusions, and is therefore not admissible.[3] More specifically, Newark asserts that Dr. McCauley's expert report is unreliable, not tailored to the facts of this case and speculative.

Rule 702 of the Federal Rules of Evidence allows a witness qualified as an expert to give testimony that would be otherwise impermissible:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained that expert testimony has three requirements: qualification, reliability and fit. See In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).

The Court agrees that significant portions of Dr. McCauley's testimony are conclusory or otherwise inappropriate. In many sections of his expert report, Dr. McCauley impermissibly draws conclusions from an entirely theoretical perspective—for example, he states that "Police officials in [upper-level] positions have greater opportunities to engage in [deviant behavior] . . . because they

---

[3] As one Court has described, "the net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702." Zeller v. J.C. Penney Co., 2008 U.S. Dist. LEXIS 25993, at *24 n.13 (D.N.J. Mar. 31, 2008).

are in a position to do so." See McCauley Report at 11-12.  Elsewhere, Dr. McCauley states that "[i]t appears that the NPD has a pattern and practice of not favoring anyone, citizen or police officer, who files a complaint against a NPD officer." Id. at 7.  Whether or not these observations are true, these are conclusions that are not properly based on the limited materials that Dr. McCauley reviewed in the context of this case—these portions of his report are conclusory and not helpful to helping the finder-of-fact in this case.  While the Court will not  parse his expert report line-by-line to determine which opinions are proper here, the above-excerpted portions are illustrative of the type of testimony that is inappropriate and inadmissible.  The Court will entertain and rule on appropriate objections at trial.

Other portions of Dr. McCauley's report, however, are appropriate.  For example he catalogues what he considers to be disparate treatment experienced by Nance (e.g., differences in the discipline experienced by Nance when compared to other officers).  Dr. McCauley also assesses whether the department violated internal affairs procedures under the facts of this case, and observes the results of the various charges brought against Plaintiff.  Under similar facts, Dr. McCauley has been permitted to testify.  Doswell v. City of Pittsburgh, 2009 U.S. Dist. LEXIS 51435 (W.D. Pa. June 16, 2009) (permitting Dr. McCauley to testify after considering "internal investigation files relating to civilian complaints" and  "other materials produced during discovery" in forming his expert opinion); Lyons v. City of Philadelphia, 2007 U.S. Dist. LEXIS 76646, at 23-25 (E.D. Pa. Oct. 12, 2007) (determining that a jury could reasonably rely on Dr. McCauley's testimony in determining whether a police department's disciplinary policies and practices were improper and in violation of Monell); Burger v. Mays, 1997 U.S. Dist. LEXIS 14922, at *9 (E.D. Pa. 1997) (permitting Dr. McCauley to testify as long as his opinions were related to police procedures and did

not invade the province of the jury by "embrac[ing] the ultimate issue to be decided by the trier of fact."). The Court finds that although Dr. McCauley's method is "not a formal, testable method, it is the one used by police practices experts and [is] accepted by the courts." Chatman v. City of Johnstown, 2005 U.S. Dist. LEXIS 27769, at *13-14 (W.D. Pa. Nov. 14, 2005). Accordingly, Dr. McCauley will be permitted to testify in accordance with this Opinion, subject to that stated above.

Newark's motion to preclude the report and testimony of Plaintiff's expert, Dr. Paul McCauley is **granted in part and denied in part**.

### III. CONCLUSION

For the reasons stated above, Newark's motion to dismiss Plaintiff's claim for punitive damages is **denied**, and its motion to bifurcate such claims is **granted**; Newark's motion to preclude Plaintiff from making reference and/or offering testimony or evidence at the time of trial of alleged violations of his constitutional rights and/or that he has asserted such claims is **denied**; Newark's motion to preclude Plaintiff from offering testimony from Councilman Ronald Rice, Jr. and from making reference and/or offering testimony or evidence regarding the Newark Police Department Racial Disciplinary Disparity Investigation is **granted**; Newark's motion to preclude the report and testimony of Dr. Paul McCauley is **granted in part and denied in part**.


/S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       June   4th  , 2010
Original:   Clerk's Office
cc:         All Counsel of Record
            The Honorable Claire C. Cecchi, U.S.M.J.
            File