NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DARREN M. NANCE, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civ. No. 97-6184 (DMC) (CCC) |
| CITY OF NEWARK, NEWARK POLICE DEPARTMENT, et al., | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff Darren M. Nance's ("Plaintiff") motion for reinstatement as a Newark police officer. Plaintiff brought an action under 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination (NJLAD) alleging that he was unlawfully terminated as a police officer by the City of Newark and others (collectively "Defendants"). A jury returned a verdict in favor of Plaintiff and he was awarded compensatory and punitive damages. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Plaintiff's motion is **denied**.

## I. BACKGROUND

Plaintiff was terminated as a Newark police officer on or about September 3, 1996 and has not served as a police officer in the past fourteen years. Def.'s Br. 1; McCarthy Aff. ¶ 9. On June 24, 2010, a jury found that Plaintiff's termination was in retaliation for invoking his right to petition

the Government under the First Amendment and that Plaintiff was subject to retaliation in violation of the NJLAD. Verdict Sheet, ECF No. 212. Subsequently, Plaintiff was awarded $350,000 in compensatory damages and $250,000 in punitive damages. Verdict Sheet as to Damages, ECF No. 215.

At trial, evidence and testimony was presented of Plaintiff's extensive disciplinary history while serving as a Newark police officer. Def.'s Br. 1; Edelstein Aff. Ex. C. In 1992, for instance, an Administrative Law Judge noted that Plaintiff "failed to appreciate and recognize that he is, as a police officer, the moral fiber of the community and that he, at all times, is held to a higher standard of conduct than the average citizen" and that Plaintiff "carries a weapon and completely lost his self control on two separate occasions." Edelstein Aff. Ex. A at 8. Plaintiff was referred for psychological testing in 1995, following an incident where he "was accused of being 'extremely hostile' towards a police surgeon." Edelstein Aff. Ex. B. at 2. The examining psychologist found that Plaintiff "has a great deal of disdain for stringent adherence to orders" and that "[h]e seems to have no insight into the fact that his anger, resentment and apparent defiance of authority may have contributed to the difficulties which he has had." Id. at 17. The evaluation also noted that Plaintiff "has certain personality characteristics which are inimical to adequate performance as a police officer. Not only is [Plaintiff] rigid, hostile and has a paranoid orientation, but . . . he perceives himself to be constantly under attack and therefore he is extraordinarily defensive, wary and quick to respond with anger if challenged." Id. at 18. Accordingly, Plaintiff was deemed "not psychologically suited to perform the role of police officer." Id. at 19.

## II. APPLICABLE LAW

"Reinstatement is an equitable remedy available in unconstitutional discharge cases arising

under § 1983." Squires v. Bonser, 54 F.3d 168, 171 (3d Cir. 1995). Whether to grant reinstatement is left to the broad discretion of the district court. Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 832 (3d 1994). "Reinstatement is the preferred remedy in the absence of special circumstances militating against it." Squires, 54 F.3d at 173. "However, reinstatement is not the exclusive remedy, because it not always feasible, such as where there exists 'irreparable animosity between the parties.'" Feldman, 43 F.3d at 831 (quoting Blum v. Witco Chem. Corp., 829 F.2d 367, 374 (3d Cir. 1987); see Squires, 54 F.3d at 175 ("In order to deny reinstatement, more than the ordinary tensions accompanying an unconstitutional discharge lawsuit must be present."); Rosario-Torres v. Hernandez-Colon, 889 F.2d 314 (1st Cir. 1989) ("[E]quitable considerations different in kind or degree from those regularly accompanying reinstatement must be present if reinstatement is to be withheld from the victim of a *first amendment* infraction.").

### III. DISCUSSION

When denying make-whole relief, a district court "is required to articulate its reasons for doing so." Squires, 54 F.3d at 172 n.6. Here, reinstating Plaintiff as a Newark police officer is inappropriate for three reasons.

First, it is undisputed that Plaintiff has been deemed psychologically unfit to perform the duties of a Newark Police Officer. Def.'s Br. 1; Edelstein Aff. Ex. B. "Society reposes in police officers responsibilities that are simultaneously weighty, sensitive, and fraught with dangerous consequences to themselves, other police officers, and the public." In re Vey, 135 N.J. 306, 308 (1994). Out of necessity to fulfill these duties, a lack of psychological fitness for duty will bar an individual from service. Id. ([P]olice work is not just another job and . . . some people should not serve as police officers"). There is clearly a strong public interest in a municipality's police force being comprised of persons psychologically fit to perform. See, e.g., Twp. of Moorestown v.

Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). Given the legitimate concern that the safety of the public would be jeopardized if Plaintiff were to be reinstated, Plaintiff's request for equitable relief must be denied. See United States v. Morgan, 307 U.S. 183, 194 (1939) ("It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved.").

Second, the long passage of time since Plaintiff last served as a Newark Police Officer makes reinstatement impracticable. See Rosario-Torres, 889 F.2d at 324 (recognizing the lapse of time between discharge and judgment as factor for reinstatement). Even if he were psychologically fit to perform, there have been major changes in the operations of the Newark Police Department over the last fourteen years. McCarthy Aff. ¶ 4. While reinstatement cannot be refused simply because the position once held by Plaintiff has been filled, see e.g., Banks v. Burkich, 788 F.2d 1161, 1165 (6th Cir. 1986), the fourteen year gap would necessitate "complete re-training" of Plaintiff at a time when the Police Department is having to layoff qualified police officers for budgetary reasons. McCarthy Aff. ¶ 10-11. This is more than the incidental inefficiencies to be expected with any reinstatement.

Third, and finally, the continued and irreparable animosity between Plaintiff and Defendants makes reinstatement here infeasible. As already noted, a court may deny reinstatement when "there exists irreparable animosity between the parties." Feldman, 43 F.3d at 831. This case brings with it a long history of hostile and confrontational behavior. Def.'s Br. 15. This tenuous relationship has been memorialized by Plaintiff Nance's behavior at City Council meetings, City Hall protests, and broadcasts across the Internet. Id. It is evident from testimony that this animosity continues. To reinstate Plaintiff Nance would mean to re-add a key ingredient to a formula for disaster.

The circumstances of this matter convince the Court that the burdens reinstatement would

impose far exceed the incidental burdens which can be expected.

### IV.  <u>CONCLUSION</u>

For the reasons stated, Plaintiff's motion seeking reinstatement is **DENIED**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | February  3 ,  2011 |
| Orig.: | Clerk |
| cc: | All Counsel of Record |
| | Hon. Claire C. Cecchi, U.S.M.J. |
| | File |