NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARREN M. NANCE, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:97-cv-06184 (DMC) (JBC) |
| CITY OF NEWARK, NEWARK POLICE DEPARTMENT, et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on remand from the Third Circuit Court of Appeals for a decision on whether the jury's award to Plaintiff Darren M. Nance ("Nance" or "Plaintiff") of $350,000 in compensatory damages includes some identifiable component of past economic damages on which prejudgment interest should have been awarded. See Nance v. City of Newark, et al., 501 Fed. App'x 123 (3d Cir. 2012). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Plaintiff's request for prejudgment interest on the jury's award of compensatory damages is **granted.**

I.     **BACKGROUND**

Nance was terminated from his position as a police officer in the City of Newark, New Jersey in 1996. He later filed suit against the City of Newark, the Newark Police Department and numerous individual defendants alleging that they terminated him in retaliation for whistle-blowing activity and other conduct protected by the First Amendment. Nance asserted claims under both 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("NJLAD"), N.J.

1

Stat. Ann. §§ 10:5-1 to -49. On June 24, 2010, after a twelve-day trial, the jury returned a verdict in favor of Nance on two claims: a § 1983 First Amendment retaliation claim based on his petitioning activity, and a "discrimination and/or retaliation" claim under the NJLAD. The next day, the jury returned a general verdict on damages, awarding Nance $350,000 in compensatory damages and $250,000 in punitive damages.

Shortly thereafter, Nance filed a motion for reinstatement to his former position. The District Court denied that motion as well as Nance's motion for reconsideration. Nance filed a pro se appeal to the Third Circuit challenging the District Court's order denying his motion for reinstatement. The Third Circuit affirmed the District Court's decision on this issue.

Nance also requested prejudgment interest on the entire jury award. This Court denied that request by Order dated May 2, 2011 on the grounds that (1) New Jersey law does not permit prejudgment interest on awards for future economic loss and (2) due to the use of a general verdict sheet, agreed to after review by both parties, the Court could not determine what portion of the jury award included damages for past economic loss. (ECF No. 254). As support for the latter conclusion, the Court cited Mandile v. Clark Material Handling Co., 303 F. Supp. 2d 531, 536 (D.N.J. 2004) (denying prejudgment interest on general verdict). Nance appealed the order denying prejudgment interest.

On appeal, the Third Circuit found that the Court's reliance on Mandile for the proposition that the jury's general verdict prevented the court from determining the nature of the jury's award was misguided. Nance, 501 Fed. App'x at 130. The Third Circuit asserted that it "neither held nor opined that parties must always request special interrogatories on the issue of damages or the nature of a jury award can never be determined from a general verdict." Id. Relying on Crowley v. Chait, No. 85-2441, 2005 U.S. Dist. LEXIS 40828 (D.N.J. Sept. 30,

2

2005) and Gierlinger v. Gleason, 160 F. 3d 858 (2d Cir. 1998), the Third Circuit held that the Court should have inquired more thoroughly into whether the award included an identifiable component of past economic damages on which prejudgment interest should have been awarded. Nance, 501 Fed. App'x at 130-31. Specifically, the Third Circuit concluded that instead of making cursory assumptions about the jury award, the Court was required to examine "the record - including the verdict form, the evidence presented at trial, and the jury instructions – in order to determine, inter alia, whether there was 'a reasonable basis for inferring that part of the jury's award sought to compensate for future losses[.]'" Id. at 131 (citing Gierlinger, 160 F. 3d at 875). Accordingly, the Third Circuit vacated the Court's order denying prejudgment interest and remanded it to the District Court for a more thorough analysis of the record.

## II. LEGAL STANDARD

When addressing federal discrimination claims made by a plaintiff under Title VII, courts act under a "strong presumption" to make the plaintiff whole by awarding prejudgment interest when the plaintiff has been awarded back pay or lost wages. Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995). This principle extends to § 1983 retaliation claims. See Gierlinger, 160 F.3d at 873. New Jersey Court Rule 4:42-11(b) requires an award of prejudgment interest in tort actions. NJLAD was amended to include all remedies available in common law tort actions, thus making prejudgment interest an available remedy for plaintiffs. Abrams v. Lightolier, Inc., 841 F. Supp. 584, 599 (D.N.J. 1994); Potente v. Cnty. of Hudson, 187 N.J. 103, 112-13 (2006). Prejudgment interest is not available for future economic loss under either federal law or New Jersey law. Thabault v. Chait, 541 F.3d 512, 533-34 (3d Cir. 2008); Poleto v. Conrail Corp., 826 F. 2d 1270, 1278 n. 14 (3d Cir. 1987); R. 4:42-11(b).

The Third Circuit has rejected the notion that without the use of special interrogatories to

3

distinguish between past and future economic damages, the nature of the jury award cannot be determined and therefore prejudgment interest cannot be calculated. Nance, 501 Fed. App'x at 130. Instead, the Third Circuit requires that the Court carefully review the record in order to determine whether the award included an identifiable component of past economic damages on which to award prejudgment interest. Id. at 131. In its review, the Court should thoroughly examine the verdict form, the evidence presented at trial and the jury instructions to determine whether there is a reasonable basis to infer that part of the jury's award of compensatory damages did or did not include future losses. Id.

### III. ANALYSIS

There is no question that Plaintiff is eligible for prejudgment interest on any portion of the jury's compensatory damages award that can be attributed to past losses. The primary issue before this Court is whether or not this portion can be determined. The Court points out that Plaintiff had the opportunity to request jury instructions to segregate the verdict, special interrogatories, and/or a verdict sheet that provided for a segregated verdict that would allow the Court to easily determine which portion, if any, of the award represented future losses. Although the Third Circuit rejected the notion that making such requests was necessary to preserve a claim for prejudgment interest, it did emphasize that "requesting special jury interrogatories to facilitate the calculation of damages benefits both the litigants and the District Court and remains the better practice." Id. at 130 n. 8.

The Third Circuit requires that the Court engage in a more searching review of the record to determine whether the amount of past losses is identifiable. The Court will begin by examining the verdict form. The Third Circuit pointed out, as does Plaintiff, that the verdict form says nothing about future losses. The jury verdict form asked the jury only to "[p]lease

4

state the amount that will fairly compensate Plaintiff for any injury which he <u>actually sustained</u> as a result of the City of Newark's conduct which shall include physical harm, emotional and mental harm and <u>lost wages (income)</u>." (ECF No. 215) (emphasis added). The Court agrees that the language "any injury…actually sustained" is suggestive of past harm and may have been interpreted by the jury to include only past losses. However, even the loss of future wages is arguably an injury "actually sustained" by the Plaintiff. Similarly, although future losses are not specified in the verdict form, the language "lost wages" could refer to both lost past wages and lost future wages and therefore does not definitively indicate only past economic losses. Overall, the Court finds that the language of the verdict form alone, although suggestive of past loss, is insufficient to provide a reasonable basis to conclude whether or not the compensatory damage award included future losses. The Court must therefore look at other relevant parts of the record to make this determination.

During a jury charge conference between the Court and counsel for both parties, the Court suggested that the verdict sheet "differentiate in the amounts as to what is front pay compared to back pay." (Damages Trial Tr. 17:8-10, June 25, 2010.) However, despite the Court's attempt to distinguish between back pay and front pay, both attorneys agreed that this differentiation was unnecessary as Plaintiff's expert economist, Dr. Frank D. Tinari ("Dr. Tinari"), would make the distinction clear in his testimony. Id. at 17:11-17, 22-25. The Court, therefore, will examine Dr. Tinari's testimony to see if such a distinction was made clear.

Dr. Tinari calculated that in the fourteen years from the date of Plaintiff's termination until the approximate time of trial, Plaintiff's total past lost wages would be $711,000 if he was never promoted and $755,000 with promotions. Id. at 41:15-20. Dr. Tinari then went on to address future losses and explained the concept of "present value," stating that "when we project

5

losses in the future, we need to know what are those dollars worth in today's money." Id. at 43:18-20. Dr. Tinari then calculated that, without promotions, one year of future loss converted to present value would be $93,809 and six years would be $554,000. Id. at 45:11-15. Using the promotions scenario, Dr. Tinari projected one year of future loss to be $98,000 for one year and $584,000 for six years. Id. at 46:18-20. Essentially, Dr. Tinari made two distinct sets of chronological calculations, one for fourteen years of back pay, accounting for the years from termination in 1996 until 2009, and one for up to six years of front pay, corresponding to the years 2010 through 2015.

The Court finds that it is reasonable to conclude that Dr. Tinari's chronological breakdown of back pay would have left the impression with the jury that any award of front pay would be added only if the jury first found that Plaintiff was entitled to all fourteen years of back pay. For example, if the jury determined Plaintiff was entitled to seven years of lost wages, it would not make sense for the jury to award back pay for the years 1996 to 2000 and then front pay for 2010 to 2011. The more logical calculation would be to award seven years of back pay representing the years 1996 to 2002. It is also therefore reasonable to conclude that a compensatory damage award of less than the total back pay amount of either $711,000 or $755,000 would not include front pay. This determination is supported by the following language in Defendant Counsel's closing statement:

> If you don't think that Mr. Nance should get 14 or 15 years of back pay...then I submit to you, you don't even get to the question of front pay. You only really get to the question of front pay if you decided that you wanted to give Mr. Nance 14 years of back pay and then give him some more.

Id. at 130:1-7. This delineation between front pay and back pay was made clear to the jury by Mr. Tinari and then further clarified by Defendant Counsel. Given that the jury's compensatory damages award was far below the total back pay amount estimated by Mr. Tinari, the Court finds

6

there is a reasonable basis to infer that no part of the award sought to compensate Plaintiff for future losses.

As required by the Third Circuit, the Court must also look to the jury instructions for any potential further insight into the breakdown of the jury's compensatory damages award. As to lost wages, the Court instructed the jury to consider

> the wages, salary, profits, reasonable value of the working time that the plaintiff has lost because of his inability and diminished capacity in an amount that would be able to compensate and the present value of the wages, etcetera, that the plaintiff is reasonably certain to lose in the future because of his inability to work.

Id. at 145:22-25; 146:1-2. As evidenced by the language "present value of the wages" and "lose in the future," it is clear that the Court did instruct the jury as to future lost wages. However, this instruction is simply a general guideline informing the jury that it may consider loss of both past and future wages in its damages calculation and does not provide any clear evidence as to the jury's determination itself.

Finally, the Court must also consider the fact that the jury may have reduced Plaintiff's damage award for failure to mitigate. However, given Dr. Tinari's calculation of total lost back pay of approximately $700,000 and total lost back and front pay combined of between $1.26 and $1.3 million dollars, the Court finds that even if the jury reduced the damages for failure to mitigate, its comparatively low compensatory damage award of $350,000 still demonstrates that the award does not include front pay. In sum, the Court finds that Mr. Tinari's testimony, in conjunction with Defendant Counsel's closing statement and the suggestive language of the verdict form provides a reasonable basis to infer that the jury's compensatory damages award of $350,000 does not include future economic loss. Therefore, Plaintiff is entitled to prejudgment interest on the entire compensatory damages award.

7

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request for prejudgment interest on the jury's compensatory damages award of $350,000 is **granted**.

*/s/ Dennis M. Cavanaugh*
Dennis M. Cavanaugh, U.S.D.J.

Date: January 30, 2014
Original: Clerk's Office
cc: Hon. James B. Clark, U.S.M.J.
All Counsel of Record
File